OPINION. Opper, Judge: This proceeding is argued by the parties as though such words as “guarantor,” “equitable owner,” and “loan” were magic phrases calculated to resolve all difficulties. No doubt their use as shorthand expressions of traditional legal relationships is ordinarily helpful, and the conclusion that a situation fits into one or another of a recognized series of categories may frequently have the effect of supplying the answer to a legal problem. But trite as it may be, it is an inescapable aspect of tax law that taxation is an intensely practical matter and that the actual transaction, rather than the legal label, is the key which we must use to unlock the barrier to a correct conclusion. When petitioner and his associates entered into the agreement which dealt with the funds advanced by Berwind-White to the insolvent trust company, and provided that the securities being purchased at a cost greatly in excess of their market value were to be liquidated, that the proceeds were to go to Berwind-White to be applied against its advance, that profits from the sale were to belong to petitioner and his associates, and that loss on the whole transaction was to be made good by them to Berwind-White, they were embarking on a financial transaction, the terms of which were designed to meet the requirements of a business situation and not to fall neatly into the terms of an accepted legal definition. And when for prior years the liability of petitioner and his associates to taxation upon current profits'on the disposition of the securities involved was considered by the Board of Tax Appeals, and upon review in the Circuit Court,[1] it is not strange that they were for purposes of that proceeding referred to as “equitable owners.” It was sufficient in the circumstances to decide there that, since they were entitled to the profits on the sales, they were subject to taxation in that capacity and to that extent were and should be treated as the owners of-the securities. We can and do accept that determination as conclusive here, without further examination, and would be bound to do so even if it were less correct than it seems. The Evergreens, 47 B. T. A. 815; affd. (C. C. A., 2d Cir.), 141 Fed. (2d) 927; certiorari denied, 323 U. S. 720; Tait v. Western Maryland Railway Co., 298 U. S. 620. But the question here is not who secures the benefit and hence owes the tax resulting from profits on the sales of specific securities. When the last sale was completed, and regardless of gain or loss on the individual items, there remained to be undertaken a final settlement between petitioner and his associates on the one hand and Berwind-White on the other. Only, of course, if the securities failed to bring the amount of the Berwind-White advance would there be any liability whatever upon the petitioner to make good his share of the difference. Only when the securities had all been sold could the exact amount of that difference be determined. To say, therefore, that petitioner was in the position of an equitable owner for purposes of reporting gain on the sales does not seem inconsistent with the view that the securities themselves were the primary source of payment and that petitioner was at the same time a guarantor against ultimate loss on the transaction as a whole in the practical, if not in the legal, sense of that concept. Respondent, it is true, meets the difficulty of depriving petitioner of a loss deduction in the only year when the loss was definitely ascertained and actually paid by evolving the theory that the original transaction constituted a contribution by petitioner to the capital of the insolvent Trust Co. and that accordingly his loss was deductible, not when the entire transaction was brought to a conclusion, but when in some prior year the stock of the Trust Co. was determined to have become worthless. But that theory assumes that petitioner acted in his capacity as a stockholder of the Trust Co., and that the purpose and effect of the agreement was to protect his investment in the stock. See William G. Park, Executor, 22 B. T. A. 1263; affd. (C. C. A., 2d Cir.), 58 Fed. (2d) 965; certiorari denied, 287 U. S. 645. This seems so wide of the realities of the situation and so strained an interpretation of the facts and, indeed, of the applicable tax principles, that we are unwilling to accept it. The arrangement between petitioner and Berwind-White Co. became closed and completed for the first time in the tax year before us. In that year he not only ascertained his liability, but paid it in cash. The net result was a loss. This deduction should be allowed. E. L. Connelly, 46 B. T. A. 222. The amount of the deduction is also in dispute. In addition to the $16,155.52 paid by petitioner in cash, there was credited against his indebtedness in the instant year for the first time an item of $5,549.10 which petitioner had pursuant to the 1934 agreement turned over to Berwind-White as an additional source of payment. This sum represented the distribution to petitioner as a depositor in the Trust Co. and was not finally applied to the debt until the year now before us. A deduction for these amounts was disallowed in the earlier proceeding on the very ground that application to the indebtedness was not made until 1940. See Berwind v. Commissioner, supra, 453, footnote 8. We think it follows that it must be allowed here. Petitioner also contends that an additional amount of some $2,000 should be added to his loss on the ground that the gains on the sales of specific securities taxed to him in prior years exceed the loss similarly allowed to him for the instant year by that amount. Even if his theory were less difficult to grasp and could be approved — which we find it unnecessary to decide — it seems evident that the facts to support his contention are absent. The concession that deductible losses are first to be set off against taxable gains renders appropriate an inquiry as to the detail of the transactions from 1931 to 1935, concerning which no evidence appears in the record. If in those years losses occurred of which petitioner could have availed himself, they might well have offset the net gain which petitioner now computes. And certainly his failure to take the deductions at the proper time can not entitle him now to attempt so belatedly to correct his earlier error. We conclude that the amount of loss to which petitioner is entitled is to be computed by adding to the losses determined by respondent to be allowable, the cash paid by petitioner and the amounts of dividends from the liquidation of the Trust Co. which were applied against his obligation. Reviewed by the Court. Decision will be entered v/nder Rule 60. Berwind v. Commissioner (C. C. A., 3d Cir.), 137 Fed. (2d) 451.