JAN G. J. BOISSEVAIN AND MARIAN A. BOISSEVAIN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29377. Promulgated September 20, 1951.

*Louis Janin, Esq.*, for the petitioners.
*John D. Picco, Esq.*, for the respondent.

**328**

OPINION.

HARRON, *Judge:* The only issue is whether the loss sustained in 1944 by the petitioner from the worthlessness of the debt of the Double Arrow Ranch corporation shall be considered a loss from the sale or exchange in 1944 of a capital asset held for not more than six months under the provisions of section 23 (k) (4) of the Internal Revenue Code,[1] as the respondent has determined; or whether the loss is one from a worthless debt which comes within the scope of section 23 (k) (1),[1] as amended by section 23 (k) (4), so as to be deductible in the entire amount of the loss, as the petitioner contends.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

\* \* \* \* \* \* \*

(k) BAD DEBTS.—

(1) GENERAL RULE.—Debts which become worthless within the taxable year ; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than

The petitioner's contentions in this proceeding present a narrow question, whether he was engaged in a business of his own consisting of the organization, the promotion, the financing, and the management of the Double Arrow Ranch corporation, which for convenience will be referred to hereinafter as the D. A. R. corporation. Under section 23 (k) (4), a debt and the loss from its worthlessness must bear a proximate relation to a business of the taxpayer. Section 29.23 (k)–6 of Regulations 111, H. Rept. No. 2333, 77th Cong., 2d Sess., p. 77, 1942-2 C. B. 431;[2] *Robert Cluett, 3rd*, 8 T. C. 1178, 1179, 1180. The relation of the loss which is sustained in a taxable year must be proximate to the taxpayer's business in that year. The parties are agreed that the loss from the worthlessness of the D. A. R. corporation debt was sustained in 1944. The petitioner recognizes the statutory requirement that the year of the loss is the year in which must exist the proximate relation of the loss to the taxpayer's business in that year. Therefore, the only materiality of facts relating to any business of the petitioner during years prior to 1944, is in connection with his burden of proving that in 1944 he was engaged in a business of his own, apart from the business of the D. A. R. corporation, to which the bad debt loss in 1944 was proximately related. In order to meet the statutory requirement above referred to with respect to the year 1944, the petitioner alleges that he was engaged in his own business which consisted of promoting and financing, and managing the D. A. R. corporation. He contends that after 1941 and during 1944 his activities were incident to carrying to completion his alleged individual business. The petitioner relies upon *Vincent C. Campbell*, 11 T. C. 510, and *Henry E. Sage*, 15 T. C. 299.

The petitioner's contentions that he, as an individual, was engaged in a business of promoting and financing, and managing the D. A. R. corporation, that his advances of funds to the corporation were made in the conduct of his alleged individual business, and that the loss from the advances of funds is directly related to his alleged individual

a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection.

\* \* \* \* \* \* \*

(4) NON-BUSINESS DEBTS.—In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

[2] H. Rept. No. 2333, 1942-2 C. B. 431:

\* \* \* \* \* \* \*

If that relation is a proximate one in the conduct of the trade or business in which the taxpayer is engaged *at the time the debt becomes worthless,* the debt is not a non-business debt for the purposes of this amendment. [Emphasis added.]

business cannot be sustained because all of the contentions conflict with the determinations made in *Dalton* v. *Bowers*, 287 U. S. 404, and *Burnet* v. *Clark*, 287 U. S. 410, and the rationale of those cases. See also: *W. A. Dallmeyer*, 14 T. C. 1282, 1290; and *A. Kingsley Ferguson*, 16 T. C. 1248.

The facts in this proceeding resemble to some extent the facts in *Dalton* v. *Bowers*, *supra*, albeit they do not support the petitioner's theory even as strongly as the facts in the *Dalton* case supported Dalton's theory. Dalton had occupied his time with research and invention for 25 years and had organized six corporations to develop and exploit his inventions, one of which was involved in his case. In this proceeding, the petitioner did not have any general occupation in the same realm of the business the D. A. R. corporation was organized to carry on, and the D. A. R. corporation was the only corporation the petitioner had organized. The facts in this proceeding also bear some resemblance to those in *Burnet* v. *Clark*, *supra*, being less favorable to the petitioner than in *Clark's* case. Clark was not only the majority stockholder of the Bowers Southern Dredging Company which did river and harbor improvement work, but also he was a member of three partnerships engaged in similar business. The points of similarity are that the petitioner in this proceeding was a majority stockholder, president, and manager of the corporation to which he advanced money and actively participated in the management of the corporation which he organized. Dalton organized the Dalton Manufacturing Corporation, owned all of its stock, was its president and treasurer, and a director, and controlled its affairs; and like the petitioner, he advanced large sums of money to the corporation which were not repaid. Clark was the majority stockholder and president of the Bowers corporation and devoted himself largely to its affairs. He endorsed and paid obligations of the Bowers corporation from which payments he sustained a loss.

Dalton conceded that the Dalton Manufacturing Company was a distinct entity with its own business, just as the petitioner concedes; and Clark agreed that the Bowers corporation was a separate entity. But Dalton argued that the Dalton Manufacturing Corporation constituted a part of his individual trade or business; and Clark argued that his endorsement and payment of notes of the Bowers corporation was part of a business which he regularly carried on for the corporation. The contention of the petitioner is that he regularly carried on a business of promoting, financing and managing the D. A. R. corporation, and that part of that alleged business was making loans to the corporation and managing the corporation. The petitioner's contentions are essentially the same as the contentions of

Dalton and Clark. In fact, the petitioner's contention is very much the same as the view which was expressed by the Court of Appeals for the District of Columbia in *Clark* v. *Burnet*, 59 F. 2d 1031, which was reversed by the Supreme Court.

The petitioner, from 1929 to 1944, was not engaged in a business of organizing and promoting corporations, or of financing corporations, or of loaning money to corporations, or, in general, of loaning money, or of managing corporate ventures or unincorporated ventures, or of buying and selling stocks. The Supreme Court observed that Dalton was not engaged in the business of buying and selling stocks and that he did not regard the Dalton corporation as his *alter ego;* and the Supreme Court concluded that "Ownership of stock is not enough to show that creation and management of the corporation was a part of his ordinary business." The petitioner did not regard the D. A. R. corporation as his *alter ego*, and in this proceeding he respects it as having been a separate entity. In Clark's case, the Supreme Court observed that Clark was not regularly engaged in a business of endorsing notes or buying and selling corporate securities and concluded that "the business which he conducted for it [Bowers corporation] was not his own. * * * The unfortunate endorsements were no part of his ordinary business, but occasional transactions intended to preserve the value of his investment in capital shares."

The petitioner became interested in ranch property and believed a ranch business would be profitable, but he chose to organize a corporation and to have it carry on the venture, rather than carry on the business himself. The petitioner professes that he does not contend that the corporation's business was his own, but we cannot regard seriously such protestation and cannot draw so fine a line as the petitioner urges. The petitioner, the evidence shows, had no business of his own; and his activities in managing the corporation's business for the corporation cannot in the same breath be held to constitute the conduct of an individual business. If we were to approve the petitioner's theory, we would violate, under the facts of this case, the rule that the Supreme Court restated in *Burnet* v. *Clark, supra,* and *Dalton* v. *Bowers, supra,* that the business of a corporation is not the business of its stockholders. We recognize that the Supreme Court in the foregoing cases was considering the question of what constitutes the conduct of a trade or business for purposes of loss deductions under section 204 (a) and (b) of the Revenue Act of 1921, and section 206 (a) of the Revenue Act of 1924, but the Congress, in enacting section 23 (k) (4) of the Internal Revenue Code, as is stated in the report of the Ways and Means

Committee, H. Rept. No. 2333, *supra*, intended that "the determination [under section 23 (k) (4)] is substantially the same as that which is made for the purpose of ascertaining whether a loss from the type of transaction covered by section 23 (e) is 'incurred in trade or business' under paragraph (1) of that section."

We are unable to distinguish this proceeding from *Dalton* v. *Bowers*, *supra*, and *Burnet* v. *Clark*, *supra*, and therefore reject the contentions and the theory of the petitioner. See *Omaha National Bank* (*Executor of the Estate of L. F. Crofoot*) v. *Commissioner* (C. A. 8, 1950), 183 F. 2d 899, in which the question arose under section 23 (k) (4) of the Code, where the deceased taxpayer, L. F. Crofoot, was interested in only one corporation, which he organized, and of which he was the chief stockholder, and to which he made loans. The Court of Appeals, on the authority of *Burnet* v. *Clark*, *supra*, denied the contention that Crofoot made loans to the corporation as part of an individual business of his own, and that the loss sustained from the loans was not a nonbusiness debt loss. The fact that the petitioner devoted all of his time to the work of serving as the manager of the business of the D. A. R. corporation does not distinguish this proceeding from Crofoot's case or from the cases of *Dalton* and *Clark*. Dalton controlled the affairs of the Dalton corporation, and Clark "devoted himself largely" to the affairs of the Bowers corporation. *McGinn* v. *Commissioner*, 76 F. 2d 680; *Ida A. Van Dyke*, 23 B. T. A. 946, affd. 63 F. 2d 1020, affd. 291 U. S. 642.

In our consideration of the facts in this proceeding, we may not pass lightly over the fact that the petitioner had invested capital in the stock of the D. A. R. corporation, and that he did so for the purpose of realizing profits and, therefore, was desirous of having the corporation continue to operate the ranch business with the hope that its fortunes would change and the losing business of the corporation would turn into a profitable one. We believe, under all of the facts, that the petitioner advanced funds under an open account to the corporation so that, by giving it aid to keep the corporation going, he would protect his capital investment in the stock and even eventually realize gain from his investment. It is difficult to regard the petitioner's investment in the stock of the D. A. R. corporation as separate and wholly unrelated to his advances of funds to the corporation in the open account.

The petitioner's theory, if approved, would broaden the meaning of the phrase "incurred in the taxpayer's trade or business" as the phrase is used in section 23 (k) (4). Section 23 (k) (4) was enacted to amend section 23 (k) (1) and to restrict deductions of the entire

amount of certain bad debt losses. In determining whether a bad debt loss is a nonbusiness loss, or not, we are obliged to give effect to the intent of the Congress in enacting the limitations provisions of section 23 (k) (4), particularly in view of the general rule that deductions from gross income are a matter of legislative grace. *Interstate Transit Lines* v. *Commissioner*, 319 U. S. 590; *Deputy* v. *Du Pont*, 308 U. S. 488; *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435.

The petitioner has relied solely on *Vincent C. Campbell, supra,* and *Henry E. Sage, supra.* Those cases are distinguishable on their respective facts. The basis of the decisions in those cases, and in the recently decided case of *Weldon D. Smith*, 17 T. C. 135, was that in each case the evidence led this Court to conclude that each of the taxpayers "was engaged in a number of business ventures, not only giving financial assistance, but also personally participating in the various enterprises" so that the loans to the corporations involved were held to be part of the regular business of each taxpayer. Also, in each of the above three cases, the bad debt loss was found to be proximately related to the business the taxpayer conducted in the year of the bad debt loss. A further distinction in this case is that the petitioner has not shown that in 1944 he was engaged in a business to which the bad debt loss in 1944 was proximately related.

Since the petitioner relies so heavily on the *Campbell* case, we believe it will be helpful to call attention to the reference, in that case at p. 512, to *Joseph Sic*, 10 T. C. 1096, which in turn relied on *Dalton* v. *Bowers, supra,* which reference pointed to the distinction of the *Campbell* case from *Dalton* v. *Bowers*. It may be helpful, also, to call attention to the reference in the case of *Henry E. Sage, supra,* at p. 304, to *T. I. Crane*, 17 B. T. A. 720, which was cited with approval by the Court of Appeals in *Washburn* v. *Commissioner*, 51 F. 2d 949. In the *Sage* case it was indicated that *Washburn* v. *Commissioner, supra,* was followed. It was noted, also, that Sage's business was not merely the venture of one particular corporation, the Revenue Development Corporation, and it was believed that Sage's case was distinguishable from *Burnet* v. *Clark, supra.*

It is held that the loss from the advances to the D. A. R. corporation was a loss from a nonbusiness debt within the scope of section 23 (k) (4) of the Code. The respondent's determination is sustained.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

Murdock, *J.*, dissents.