F. SITTERDING, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33445. Promulgated April 21, 1953.

*William T. Hodge, Esq.,* for the petitioner.
*Paul E. Waring, Esq.,* for the respondent.

OPINION.

Hill, *Judge:* In 1942 the petitioner loaned to S-C-D the sum of $7,780. Later in his 1945 income tax return the petitioner determined that the recovery on this debt would be at the rate of 10 per cent, or $778, and claimed a ·deduction as "a partial bad debt connected with his trade or business" the amount of $7,002, which respondent disallowed.

The parties disagree as to the nature of the transaction out of which the claimed deduction arose. The respondent contends that the release of the debt due and owing to the petitioner constituted a contribution to the capital of S-C-D, or a nonbusiness bad debt. The petitioner contends that the release of the debt did not result in a bad debt at all but rather a loss resulting from the petitioner's deliberate act of cancellation, which, viewing the transactions occurring in 1944 as a whole, resulted in a loss from a transaction entered into for profit under the provisions of section 23 (e) (2) of the Internal Revenue Code.

That a distinction exists between the deductibility of losses and worthless debts has long been recognized. See *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182, where it was held that the provisions of the law dealing with deductions for losses and deductions for bad debts are mutually exclusive and hence an amount deductible under one is not deductible under the other.

Section 124 (d) of the Revenue Act of 1942, which is now section 23 (k) (4) of the Internal Revenue Code, dealing with nonbusiness bad debts, has served to bring the distinction between deductions permitted for losses and those permitted for worthless debts into sharp focus, for an examination of sections 23 (e) (2) and 23 (k) (4) indicates that the distinction carries with it radically different tax consequences. It is therefore pertinent to inquire into the true nature of the transaction out of which the deduction argued for by the petitioner grows.

In 1942 S-C-D was experiencing financial difficulty. The petitioner loaned to the corporation $7,780, taking the corporation's demand note for that sum, thereby creating a debtor-creditor relationship which existed down to the year 1944. The petitioner argues that the events transpiring in 1944 as the result of the poor financial condition of S-C-D must be viewed as a single transaction, including the petitioner's deliberate act of cancellation, and the agreements entered into by the stockholders of S-C-D, in order to mitigate their losses, were sufficient to convert his relinquishment of his rights as a creditor into a loss incurred in 1945 from a transaction entered into for profit. It is true that the petitioner as a stockholder of S-C-D was motivated in subordinating his claim against S-C-D by the following factors:

(1) S-C-D had on August 3, 1944, agreed by contract to purchase the principal assets of Sitcarda, consisting of land and certain buildings, for the consideration of $100,000. The petitioner was one of the principal stockholders of Sitcarda.

(2) The contract with Heine provided for the payment of the debts of S-C-D to the banks, amounting to $69,000, which the petitioner, pursuant to guarantee agreements, had jointly and severally guaranteed.

(3) By agreement between the individuals and corporations which had released the debts due and owing to them from S-C-D, it was provided that their claims should be subordinated and each $50 of indebtedness released by them would be treated as a share of S-C-D stock for purposes of distributing any surplus from the sale of assets and collections under the Henry W. Heine contract.

However, in 1942 when the petitioner loaned $7,780 to S-C-D and took its note in return, a debtor-creditor relationship was created. Any loss arising from that relationship would have been deductible, if at all, under the provisions of section 23 (k) (4) of the Internal Revenue Code, as a nonbusiness bad debt, for the petitioner was not in the business of loaning money to corporations. See *Jan G. J. Boissevain*, 17 T. C. 325; *Estate of William P. Palmer, Jr.*, 17 T. C. 702. Nor could the subordination agreement, whereby the stockholder-creditors, including the petitioner, agreed to subordinate their claims against S-C-D, convert an otherwise business bad debt into a section 23 (e) (2) loss for purposes of deduction. To permit such a result would emasculate section 23 (k) (4) of the Code. See H. Rept. No. 2333, 77th Cong. 1st Sess., p. 76.

The ingenious argument made by the petitioner in his effort to demonstrate that the cancellation of the notes of the stockholder-creditors of S-C-D was a transaction entered into for profit is interesting but not convincing.

From the above it follows that the loss claimed by the petitioner in 1945 as a deduction is deductible, if at all, as a nonbusiness bad debt. Further, in order to establish deductibility of the item the petitioner must carry the burden of proof in establishing the occurrence during the taxable year 1945 of some identifiable event tending to establish the worthlessness of the debt in that year. The petitioner has been unsuccessful in doing this. Indeed, the balance sheet of S-C-D as of August 8, 1944, the date the petitioner canceled the note, shows assets of $193,821.75 and liabilities of $198,558.02. Had the petitioner elected to stand on his rights as a creditor, the assets of S-C-D were sufficient to satisfy not only his claim but the claims of the banks, for which he was bound as guarantor, at the rate of approximately 97 cents on the dollar. Further, the record reveals that the petitioner received from the surplus remaining after the liquidation of the assets of S-C-D and the payment of its liabilities, a distribution of $1,907.67 in 1946 and a distribution of $1,379.11 in 1948. Of the amount distributed in 1946, $699.42 was attributable to the note supposedly released by the petitioner in 1944. Of the amount of the distribution in 1948, $506.48 was attributable to the note. The fact that the petitioner received distributions attributable to the debt, which he claims was worthless in 1945, in the years 1946 and 1948 is hardly indicative of worthlessness in the year 1945. Therefore, on the record as a whole, we hold that the petitioner has failed to establish the worthlessness in 1945 of the debt due and owing to him from S-C-D.

*Decision will be entered for the respondent.*