OPINION. Hill, Judge: The petitioner contends that his business both in 1931 and 1946 was being an officer and director in Berwind-White, its subsidiaries, and affiliated companies. He pleads and argues alternatively that the amount here in controversy is deductible as a loss, under the provisions of section 23 (e) (1) or 23 (e) (2) of the Internal Bevenue Code, or as a worthless business debt under section 23 (k) (1). In opposition to the position taken by the petitioner, the respondent has determined that the amount of $24,250 is deductible only under section 23 (k) (4) as a nonbusiness bad debt to be treated for tax purposes as a short-term capital loss. The petitioner relies heavily upon the Findings of Fact and Opinion in Charles G. Berwind, supra, evidently under, the assumption that they are controlling in this case. We do not deem it necessary to discuss that case hete. It is sufficient to say that both the facts and the law involved are different from, that with which we are presently concerned. Even a cursory examination of the case makes this clear. However, in passing it may be pointed out that the finding on which the petitioner relies, Petitioner’s purpose in signing his contract [not here involved] was the protection of his business and investments. He was a member of Berwind-White. Its good name was affected. The Trust Co. [the Company here] was known as the Berwind Bank. was followed in the opinion by the following language: When petitioner and his associates entered into the agreement which dealt with the funds advanced by Berwind-White to the insolvent trust company, and provided that the securities being purchased at a cost greatly in excess of their market value were to be liquidated, that the proceeds were to go to Berwind-White to be applied against its advance, that profits from the sale were to belong to petitioner and, his associates, and that loss on the whole transaction was to be made good by them to Berwind-White, they were embarking on a financial transaction, the terms of which were designed to meet the requirements of a business situation and not to fall neatly into the terms of an accepted legal definition. And when for prior years the liability of petitioner and his associates to taxation upon current profits on the disposition of the securities involved was considered by the Board of Tax Appeals and upon review in the Circuit Court,[1] it is not strange that they were for purposes of that proceeding referred- to as “equitable owners.” It was sufficient in the circumstances to decide there that, since they were entitled to the profits on the sales, they were subject to taxation in that capacity and to that extent were and should be treated as the owners of the securities. [Emphasis added.] Since the transaction was deemed closed in tbe year 1940, the opinion went bn to hold that the petitioner was entitled to deduct the amount in controversy there as a loss resulting from a transaction entered into for profit. Sections 23 (e) and 23 (k) of the Code are mutually exclusive. See Spring City Foundry Co. v. Commissioner, 292 U. S. 182. The distinction between deductions permitted with respect to losses and those permitted with respect to worthless debts has taken on new significance since the addition to the Internal Revenue Code of section 23 (k) (4) by section 124 of the Revenue Act of 1942, which provides that the loss resulting from a nonbusiness bad debt shall be considered a loss from the sale or exchange during the taxable year of a capital asset held for not more than 6 months. Examination of the transaction out of which the amount here in controversy arises indicates clearly that a debtor-creditor relationship was created between the Company and the petitioner in 1931 when the petitioner, as a “contracting stockholder,” advanced the sum of $24,250 to the Company. This is true notwithstanding the fact that the Company was to be immediately liquidated and that the payment of the sum was subordinated to the claims of creditors, preferred stockholders, and others. Therefore, the loss amounting to $24,250 which resulted from the transaction can be deducted only under the provisions of section 23 (k), for nothing occurred subsequent to the date on which the debt was created to convert the transaction into a loss as that term is used in section 23 (e). This leaves only the petitioner’s argument with respect to section 23 (k) (1) to be considered. The revenue laws contain only the negative definition of what constitutes a business bad debt, found in section 23 (k) (4), where it is said that “The term ‘non-business debt’ means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer’s trade or business.” However, H. Rept. No. 2333, 77th Cong., 2d Sess., page 76, provided: The question whether a debt is one, the loss from the worthlessness of which is incurred in the taxpayer’s trade or business, is a question of fact in each particular case, and the determination is substantially the same as that which is made for the purpose of ascertaining whether a loss from the type of transaction covered by section 23 (e) is “incurred in trade or business” under paragraph (1) of that section. The character of the debt for this purpose is not controlled by the circumstances attending its creation or its subsequent acquisition by the taxpayer or by the use to which the borrowed funds are put by the recipient, but is t© be determined rather by the relation which the loss resulting from the debt’s becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt is not a nonbusiness debt for the purposes of this amendment. This language has been incorporated in Regulations 111, section 29.23 (k)-6, and applied by the courts. Thus the petitioner’s contention in this proceeding with respect to section 23 (k) (1) presents the narrow question of whether or not he was engaged in a trade or busines j of his own in 1946 to which the debt in question was proximately related. Robert Cluett, 3rd, 8 T. C. 1178. Jan G. J. Boissevain, 17 T. C. 325. As noted above, the petitioner argues that he was engaged in the trade or business of being an officer and director of Berwind-White, its subsidiaries, and affiliated companies. He does not contend that he was in the trade or business of promoting, organizing, financing, or lending money to corporations, only that his trade or business is being an officer and director in various corporations. But the conclusion that the business of Berwind-White, its subsidiaries, and affiliated corporations was not the business of the petitioner follows as a matter of necessity under such decisions as Burnet v. Clark, 287 U. S. 410; Estate of William P. Palmer, Jr., 17 T. C. 702; Fred A. Bihlmaier, 17 T. C. 620; Jan G. J. Boissevain, supra. The cases on which the petitioner relies are not in point. The authority contained in such cases as Weldon D. Smith, 17 T. C. 135, revd. 203 F. 2d 310, Henry E. Sage, 15 T. C. 299, and Vincent C. Campbell, 11 T. C. 510, is applicable only to the exceptional situations where the taxpayer’s activities in promoting, financing, managing, and making loans to a number of corporations have been regarded as so extensive as to constitute a business separate and distinct from the business carried on by the corporations themselves." Whether the petitioner is employed as a director or officer in 1 corporation or 20 corporations, he was no more than an employee or manager conducting the business of the various corporations. If the corporate form of doing business carries with it tax blessings, it also has disadvantages; so far as the petitioner is concerned, this case points up one of the corporate form’s disadvantages. The petitioner can not appropriate unto himself the business of the various corporations for which he works. Robert Cluett, 3rd, supra, involved a taxpayer who, as a member of the New York Stock Exchange, sold a fractional interest in his membership in the Exchange and received as part of the consideration therefor a note which became worthless in part in 1943. There we said: The debt here in question was not the result of a loan by the petitioner to a friend or relative or an isolated transaction which bore no relation whatsoever to the business in which he was engaged, but, on the contrary, was closely related to the business of owning and using a stock exchange membership for the production of income, in which business the petitioner was engaged not only in 1929, when the debt was created, but also In 1943, when it became worthless. * * * The case of Frank B. Ingersoll, 7 T. C. 34, is not in point. In that case, which involved a taxable year prior to the enactment of section 23 (k) (4), we specifically held that there was not a debtor-creditor relationship, since there was no debt, and allowed the deduction claimed as a loss. In the vernacular of the business world the petitioner may well be engaged in the business of being an officer and director of Berwind-White, its subsidiaries, and affiliated companies. However, we deal with tax concepts and the term “trade or business” used in sections 23 (e) (1) and 23 (k) (4) of the Code bears a restricted meaning. Higgins v. Commissioner, 312 U. S. 212; Burnet v. Clark, supra. The activities of the petitioner insofar as they have been presented to us do not constitute a trade or business within the meaning of the applicable revenue laws. Therefore, we must sustain the determination of the respondent that the petitioner is entitled only to a deduction for a nonbusiness bad debt under the provisions of section 23 (k) (4) of the Code. Decision will be entered for the respondent. Berwind v. Commissioner (C. A., 3d Cir.), 137 Fed. (2d). 451.