William H. Schomburg v. Commissioner.
William H. Schomburg v. Commissioner
Docket No. 37620.
United States Tax Court
1954 Tax Ct. Memo LEXIS 274; 13 T.C.M. (CCH) 234; T.C.M. (RIA) 54078; March 18, 1954
H. A. Mihills, Esq., 917 Munsey Building, Washington, D.C., and Robert J. Bird, Esq., for the petitioner. Robert E. Johnson, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined a deficiency in income tax for 1947 in the amount of $6,171.87. The questions to be decided are as follows: (1) Whether an indebtedness to petitioner of $13,750, which became worthless in 1947, was a business or a nonbusiness bad debt. The Commissioner determined that the indebtedness was a nonbusiness bad debt under section 23 (k) (4). (2) Whether the cost basis of stock sold in 1947 is $1,662.50, or $831.25, as the Commissioner has determined. The Commissioner reduced the amount of long-term capital loss from $1,528.74, claimed by petitioner, to $697.49, by using *275 the lower cost basis. Findings of Fact The facts which have been stipulated are so found; the stipulation is incorporated herein by this reference. Petitioner is a resident of Toledo, Ohio. He filed his return for 1947 with the collector for the tenth district of Ohio. Issue 1: Bad Debt Deduction In 1947, petitioner was (and still is) president and general manager of Superior Spinning and Stamping Company. He has been resident since June 1943. The corporation was organized in 1943. Its business is the operation of a metal spinning and processing plant in Toledo. Petitioner owns 52 per cent of the stock of the corporation. Melvin Pine and Company, Inc., (New York), is a New York Corporation. Its business is the exporting of heavy equipment such as dredging and earth moving equipment. Melvin Pine has an interest in Melvin Pine and Company (New York). On September 23, 1943, Melvin Pine and petitioner organized an Ohio corporation under the name of MEPCO, Inc., to carry on a business of exporting consumers' goods. Pine and petitioner contributed $1,500, each, to the original capital of MEPCO, and each received 50 shares of its stock. Petitioner became president of MEPCO. *276 Its office was located in Toledo. Petitioner hired managers of MEPCO and they were to investigate export possibilities. MEPCO was unsuccessful. By 1945, its financial condition was very poor. In 1944, the name of MEPCO was changed to Melvin Pine and Company (Ohio) and the corporation underwent a reorganization. The outstanding stock, 100 shares, was turned in. In exchange, petitioner received 35 shares. Pine transferred his stock to Melvin Pine Company, Inc., (New York), and that corporation received 40 shares of the stock of the Ohio corporation. Melvin Pine and Company, the Ohio corporation, was unsuccessful. It was closed in 1947, and dissolved in May 1948. From August, 1944, until November, 1947, petitioner advanced, from time to time, various sums of money ranging from $250 to $3,750, to Melvin Pine and Company (Ohio), and to its predecessor, MEPCO. The total amount advanced during this period was $13,750. Petitioner did not receive notes for any of these advances, and he did not receive any interest thereon. The sums which petitioner advanced were for use in the activities of the corporation, i.e., they were for operating expenses, advertising, traveling expenses, salaries, *277 rent, and office supplies. The advances were to be repaid when the corporation realized earnings. The advances were regarded as loans by the parties concerned. Melvin Pine and Company (New York) also made loans to the Ohio company in amounts which were equal to the advances of petitioner. From 1943 to 1947, MEPCO, Inc., and its successor, Melvin Pine and Company, did little or no business. It reported gross receipts of only $1,325 for the taxable year ending September 30, 1944; it reported no gross receipts for 1945 and 1946; it reported $2,778.36 gross receipts in 1947 when the corporation ceased operating. Losses were reported in the amounts of $1,666.80, $2,454.69, $7,676.58 and $15,967.04, respectively, for the above years. Petitioner's business affiliations and activities from 1928 to June, 1943, were as follows: In 1928, petitioner was an officer, stockholder, and employee of Bingham Stamping Co. In 1929, Bingham Stamping Co., became a wholly owned subsidiary of The Logan Gear Co., and petitioner became its president. He was associated with Bingham Co. and Logan Co., from 1928 until some time in 1937. In 1937, petitioner became executive vice-president of Buckeye Traction *278 Ditcher Company, and he remained with it until June, 1943, when Superior Spinning and Stamping Company was organized. Petitioner, during the time he was employed by Bingham Co., Logan Co., and Buckeye Co., did not make any loans to any of them. Petitioner made loans to Superior Spinning and Stamping Co., as follows: August 3, 1943 - $5,000, without interest, re paid in 60 days. November 13, 1943 - $8,000, without interest, repaid in 60 days. December 30, 1944 - $10,000, interest paid, $208.89, repaid in 4 months. Petitioner, in traveling for the Superior Spinning and Stamping Company, paid his traveling expenses out of pocket and was reimbursed therefor every six or twelve months whenever petitioner requested it. No interest was paid on the amounts reimbursed to petitioner. During 1947, Superior Spinning and Stamping Company had a net worth of $140,000 or $150,000. During the years 1943 to 1947, petitioner did not have offices or office personnel separate and apart from the offices of the two corporations, Melvin Pine and Company (formerly MEPCO, Inc.), and Superior Spinning and Stamping Company. After 1943, apart from these two companies, petitioner was not involved in *279 the organization of any other companies, although he investigated some possibilities. Petitioner was not engaged in the business of loaning money to, or of promoting, organizing, and financing corporations during the year 1947. The debt in the amount of $13,750, owed petitioner by Melvin Pine and Company was not a debt, the loss from the worthlessness of which was incurred in petitioner's business. It was a nonbusiness debt. Issue 2: Basis of Stock In 1947, petitioner sold 5.7 shares of stock of Cities Service Company, hereinafter called Cities Service. On May 26, 1930, petitioner bought 25 shares of Cities Service stock for $831.25. Petitioner purchased 25 additional shares for the same price. Cities Service issued stock dividends and from that source petitioner acquired 7 more shares. Petitioner never received any stock of Cities Service, other than the dividend shares, except by purchase. Pursuant to a resolution dated April 26, 1938, Cities Service called in old stock outstanding and issued new stock on the basis of one share of new stock for ten shares of old stock. The cost basis of the 5.7 shares of stock sold in 1947 is $1,662.50. Opinion The two issues to *280 be decided are (1) whether the loss sustained by petitioner in 1947 from the worthlessness of the debt of Melvin Pine and Company, a corporation, shall be considered a loss from the sale or exchange in 1947 of a capital asset held for not more than six months under the provisions of section 23 (k) (4), I.R.C., [1] as the respondent has determined, or whether the loss is from a worthless debt which comes within the scope of section 23 (k) (1), as amended by section 23 (k) (4), so as to be deductible in the entire amount of the loss as the petitioner contends. Briefly stated, the question is whether the debt was a business or a nonbusiness debt. (2) Whether the cost basis of Cities Service Company common stock for purposes of determining long-term capital loss from the sale of the stock in 1947 is $1,662.50, or $831.25, as the respondent has determined. *281 Issue 1: Bad Debt Deduction The question under this issue is a question of fact under which petitioner has the burden of proof. The parties agree that the debt became worthless in 1947. Under section 23 (k) (4), a debt and the loss from its worthlessness must bear a proximate relation to a business of the taxpayer, and the relation of the loss which is sustained in a taxable year must be proximate to the taxpayer's business in that year. Jan G. J. Boissevain, 17 T.C. 325, 329. From 1943 to 1947, petitioner was interested in only two corporations, Superior Spinning and Stamping Company and Melvin Pine and Company (and its predecessor, MEPCO). The advances of funds to Melvin Pine and Company (and its predecessor) were for the purpose of paying all of its operating expenses, i.e., for the purpose of keeping the corporation in operation. Also, it is evident that the advances of each stockholder served the purpose of protecting their capital investment. The facts in this case are closely similar to those in Jan G. J. Boissevain, supra, where the same contention was made as petitioner makes here. We rejected such contention in the Boissevain case because *282 it was in conflict with Dalton v. Bowers, 287 U.S. 404, and Burnet v. Clark, 287 U.S. 410, and because the evidence did not establish that in the taxable year, the taxpayer was engaged in a business to which the bad debt loss in the taxable year was proximately related. Here, the petitioner has failed to establish that in 1947 he was engaged in a business to which the bad debt loss in 1947 was proximately related. This case is, in substance, indistinguishable from Jan G. J. Boissevain, supra, and Estate of William P. Palmer, Jr., 17 T.C. 702. See, also, Charles G. Berwind, 20 T.C. 808 (promulgated July 9, 1953). Furthermore, the evidence does not establish that petitioner was engaged in the trade or business of promoting, organizing, financing, or lending money to corporations. Weldon D. Smith, 17 T.C. 135, reversed 203 Fed. (2d) 310, (cited by petitioner who relies upon the decision of this Court) is distinguishable because in that case there was proof that the taxpayer was engaged in a number of business ventures giving financial aid to them, personally participating in such varied enterprises. *283 Petitioner relies, also, upon Henry E. Sage, 15 T.C. 299; and Vincent C. Campbell, 11 T.C. 510. Those cases are distinguishable on their facts. It is held that the loss in 1947 from the advances to Melvin Pine and Company, and its predecessor, in the amount of $13,750 was a loss from a nonbusiness debt within section 23 (k) (4). The respondent's determination is sustained. Issue 2: Basis of Stock The respondent's determination that the basis of the 5.7 shares of Cities Service stock is $831.25 is based upon his conclusion that petitioner bought only 25 shares of the old stock, and that petitioner has failed to establish any basis for the remaining 32 shares of the old stock. Respondent agrees that petitioner received 5.7 shares of new stock for 32 shares of old stock. We are satisfied from petitioner's testimony that he acquired 50 shares of the old stock through purchases; that he acquired 7 shares of the old stock through stock dividends; and that the cost basis of the 5.7 shares of new stock is $1,662.50. The respondent's determination is overruled. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. * * *
(k) Bad Debts. - (1) General Rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part; the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection. * * * * * *
(4) Non-business debts. - In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. * * *↩