Paul S. Edmonds and Catherine M. Edmonds v. Commissioner.
Edmonds v. Commissioner
Docket No. 60337.
United States Tax Court
T.C. Memo 1957-97; 1957 Tax Ct. Memo LEXIS 154; 16 T.C.M. (CCH) 398; T.C.M. (RIA) 57097; June 19, 1957
*154 John S. Lynch, Jr., Esq., for the petitioners. Gordon N. Cromwell, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in the petitioners' income taxes for the years 1951, 1952 and 1953, in the amounts of $439, $1,082.50 and $1,459.08, respectively. Certain adjustments made by the Commissioner were either uncontested or conceded to be correct. We must decide whether a debt which became worthless in 1951 is a business or a nonbusiness bad debt. Findings of Fact Some of the facts are stipulated. They are found as stipulated and are incorporated herein by reference. The petitioners, Paul S. Edmonds and Catherine M. Edmonds, are husband and wife, and reside in Portland, Oregon. They filed their tax returns for the years in question with the director of internal revenue for the district of Oregon. For several years prior to 1946 Paul was an employee of several different "bottle clubs" in the State of Washington. These "bottle clubs" were non-profit corporations, licensed by the State of Washington, which entitled each member of the club to keep on the premises a reasonable quantity *155 of liquor for personal consumption on the premises. On or about August 16, 1946, the petitioners purchased from Howard Didricksen property consisting of a leasehold in a building in Renton, Washington, then occupied by the Renton City Club, a "bottle club", hereafter referred to as the Club, plus furniture and fixtures in the building, for $45,000. At the time of the purchase Didricksen was indebted to the American Discount Corporation, hereafter referred to as American Discount. The petitioners paid $10,000 down in cash and the balance of $35,000 was handled by the execution of a promissory note from petitioners to American Discount in the amount of $43,368, which included service and finance charges of $8,368. The petitioners also gave to American Discount, as security, a chattel mortgage on all of the furniture and equipment of the Club. From September 1946 until September 27, 1949, the petitioners continued renting the building to the Club. During that time the petitioners were also employed by the Club. Paul was its President and acted as chef and manager. Catherine was its Secretary-Treasurer and acted as cashier. On December 2, 1948, the law of Washington was changed to *156 allow the sale of intoxicating liquor by the drink. The law provided that "bottle clubs" then holding licenses would have to apply for a license under the new law within six months. Pursuant to this law the Washington State Liquor Control Board adopted Regulation No. 108, which provides in part as follows: "[1] All the property of any club, as well as the advantages thereof, must belong to the members. [2] Any funds advanced for the purchase or improvement of club rooms or quarters must be advanced by the membership or upon securities or properties owned by the club * * *. [3] No club shall receive any money from any source whatever under any arrangement through or under which the person or persons advancing such funds * * * are to be given control or supervision over the operation of the club." Paul applied for a liquor license for the Club and was advised by the Liquor Control Board that such a license would not be issued unless the petitioners disassociated themselves of any interest they had as employees or officers and in addition transferred their interest in the leasehold and the furniture and fixtures to the Club. Accordingly, on September 27, 1949, the petitioners *157 sold their interest in the personal property and leasehold improvements to the Club for $47,000, receiving therefor the Club's promissory note and a chattel mortgage as security for the sale. At the time of this sale American Discount released its chattel mortgage of record on the same property, and in consideration thereof the petitioners executed a new note directly to American Discount for the balance of their then indebtedness of $30,687. As security for their new note the petitioners assigned to American Discount the $47,000 promissory note and chattel mortgage which had been given to them by the Club. It is stipulated that the petitioners disclosed on their 1949 tax return a large potential profit as a result of the sale, but no taxable gain was reported since the Club's note did not have a fair market value in excess of the petitioners' adjusted basis in the assets sold. In 1951 American Discount foreclosed on the chattel mortgage given by the Club to the petitioners and caused the personal property secured by the chattel mortgage to be sold at a sheriff's sale on June 11, 1951. American Discount bid in the assets which it later sold. After payment of the costs of sale and *158 other charges incident thereto, the sum of $4,613.18 was credited by American Discount on the indebtedness owing by the petitioners to it. It is stipulated that the Club's note became worthless in 1951 when the security therefor was sold at the aforesaid sheriff's sale. The petitioners' adjusted basis in the $47,000 note of the Club is not less than $23,934.55 as shown below: Cost of property acquired in 1946
$45,000.00
Depreciation allowed or allowable
15,902.27
Unrecovered Cost
$29,097.73
Subsequent payments and credits: Payment by City Club of
Renton, Inc.
$ 550.00
Net credited from sale
4,613.18
5,163.18
Adjusted Basis
$23,934.55
Subsequent to disposition of the assets to the Club, Paul was employed by the Brown-Vinters Company, Inc., a liquor importer. Paul was a traveling representative of that company during the years 1951, 1952 and 1953. The petitioners filed a joint income tax return in 1951 in which they reported an ordinary loss of $30,999.34, as a result of the Club's note becoming worthless that year. In 1952 and 1953 the petitioners filed joint income tax returns in which they carried forward the net operating loss reported *159 in 1951. The Commissioner determined that when the Club's note became worthless in 1951, the petitioners sustained a loss from a non-business bad debt and did not have a net operating loss for that year. The petitioners have never engaged in the business of financing liquor club operations. The Club's debt to the petitioners and its worthlessness in 1951 do not bear a proximate relation to Paul's business as a salesman for a liquor importer. The petitioners' losses, which resulted from the Club's note becoming worthless, were not incurred in any trade or business in which the petitioners were engaged. Opinion The question for decision is whether the Club's debt to the petitioners, which became worthless in 1951, is a business bad debt or a non-business bad debt. The debt is a non-business bad debt unless the debt and the loss from its worthlessness bear a proximate relation to a business in which the taxpayer was engaged. H. Rept. No. 2333, 77th Cong., 2d Sess., p. 77, 1942-2 C.B. 431; Jan G. J. Boissevain, 17 T.C. 325 (1951); Estate of Theodore Gutman, 18 T.C. 112, 121 (1952). The petitioners recognize that there are numerous cases *160 where taxpayers, who are substantial stockholders in corporations, have loaned money to the corporations which they have lost on their subsequent failure and the debts have been held to bear no proximate relation to the petitioner's business. They seek to distinguish these cases by reason of the fact that the Club was a non-profit corporation. The petitioners also argue that Paul's business was the selling and handling of intoxicating liquors, which business he was engaged in during the year the debt became worthless, i.e. Paul was a regional salesman for a liquor importer rather than operating a club, but nevertheless he was still in the broad general field of liquor distribution. The petitioners' last argument, as we understand it, is that since their business was terminated by operation of law, then as a matter of policy the debt should be treated as a business bad debt. No authority was cited in support of these arguments, and we can find none. We think the petitioners' arguments are without merit. The debt and its worthlessness, which grew out of the petitioners' investment in property leased to a "bottle club", as we see it, bears no proximate relation to Paul's business either *161 as an employee of a bottle club at the time the debt arose or as a salesman for a liquor importer in 1951, when the debt became worthless. In substance, the petitioners purchased certain property as an investment, which property they leased to the Club. In 1949 they sold their investment, receiving in return the note in question. That they were forced to sell by virtue of the change in law does not affect the tax consequences of the transaction. In 1951 when the note became worthless, the petitioners' investment transaction terminated in an over-all loss. As we see it, the investment at no time was related to their business. We hold that the petitioners sustained a non-business bad debt in 1951 when the Club's note became worthless. Decision will be entered for the respondent.