Merriman H. Holtz and Helene Tyroll Holtz v. Commissioner.
Holtz v. Commissioner
Docket No. 58455.
United States Tax Court
T.C. Memo 1957-106; 1957 Tax Ct. Memo LEXIS 148; 16 T.C.M. (CCH) 439; T.C.M. (RIA) 57106; June 26, 1957
*148 Moe M. Tonkon, Esq., Public Service Building, Portland, Ore., for the petitioners. John D. Picco, Esq., for the respondent. WITHEY
Memorandum Opinion WITHEY, Judge: The respondent determined deficiencies in petitioners' income tax for the years and in the amounts as follows: Year
Amount
1949
$958.30
1950
671.66
The sole issue presented for our determination is the correctness of the respondent's action in determining that losses sustained by petitioners during 1950 as the result of discharging a guaranty on bank loans made to a corporation controlled by them are not deductible as business bad debts under section 23(k)(1) of the Internal Revenue Code of 1939, but are deductible only as nonbusiness bad debts pursuant to section 23(k)(4) of the 1939 Code. [Findings of Fact] All of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, residing in Portland, Oregon, filed their joint income tax returns for 1949 and 1950 with the collector for the district of Oregon at Portland, Oregon. Inasmuch as the activities of Merriman H. Holtz are those with which we are here primarily concerned, "petitioner" or "Holtz" *149 as hereinafter used has reference to him. Petitioner has been engaged since 1930 in the business of selling and distributing 16 millimeter film, audio visual equipment, supplies and accessories. In 1930, petitioner organized Pictures, Inc., under the laws of the State of Oregon. Pictures, Inc., was inactive until 1949 when it began the sale and distribution of 16 millimeter films in the Territory of Alaska. The corporation has continued in operation since 1949. Holtz was the manager of Pictures, Inc., and advanced to it the funds required for its operation. During 1949 and 1950, petitioners owned 99 of the 100 outstanding shares of capital stock of the aforementioned corporation. During 1932, petitioner organized Screen Adettes, Inc., pursuant to the laws of the State of Oregon. Since the time of its organization, Screen Adettes, Inc., has been engaged in the sale and distribution of 16 millimeter films in Oregon. During 1949 and 1950, petitioners owned 91 of the 100 shares of outstanding capital stock of Screen Adettes, Inc. Petitioner occasionally made advances to this corporation for working capital. In addition, Screen Adettes, Inc., on several occasions borrowed money from *150 the United States National Bank of Portland, Oregon. All such loans were personally guaranteed by Holtz, who was president and managing officer of Screen Adettes, Inc., and was actively engaged in its affairs. In 1945, petitioner organized Screen Adette Equipment Corporation under the laws of Oregon for the purpose of engaging in the sale and distribution of motion picture equipment and accessories on the Pacific coast. Petitioners were the owners of 500 of 503 shares of its outstanding stock. Holtz was president and general manager of the corporation and was actively engaged in conducting its operations. In addition to the original capital invested by petitioners, Screen Adette Equipment Corporation obtained working capital from the United States National Bank of Portland, Oregon. The amounts so obtained were in the form of loans which were personally guaranteed by Holtz who pledged as collateral certain shares of listed common stock owned by petitioners. At the time they were pledged by petitioner, the foregoing shares had a market value substantially in excess of the value of the loans. In October 1949, Screen Adette Equipment Corporation filed a voluntary petition in bankruptcy *151 with the United States District Court for the District of Oregon. The corporation thereafter ceased its operations and was dissolved by proclamation of the Governor of the State of Oregon on December 29, 1950. Pursuant to the bankruptcy proceeding, creditors of Screen Adette Equipment Corporation received only 0.038 per cent upon the claims filed by them. In January and March of 1950, the United States National Bank of Portland sold the collateral securities pledged by the petitioner as guarantor for the indebtedness of Screen Adette Equipment Corporation. The bank realized $83,316.29 from the sale of the securities which was applied against the indebtedness of the corporation. Consequently, petitioner was indebted to the bank in the amount of $64,119.34 upon his guaranty. Holtz was engaged as sole proprietor in the sale and distribution of audio visual equipment during part of 1950. In addition, during 1950, petitioner was employed on a part-time basis to sell 16 millimeter films for Audio Film Center, an association which operated a film rental library in Portland, Oregon. Petitioners were the owners of 90 per cent of the outstanding capital stock of Helene's, Inc., for many *152 years prior to 1949. Helene's, Inc., was a corporation engaged in the operation of a ladies' retail apparel store in Portland, Oregon. Petitioner was president and was active in the management of Helene's, Inc. After moving to a new location in 1947, Helene's, Inc., experienced substantial losses and in 1949 all of its assets were sold. Creditors of Helene's, Inc., received approximately 50 per cent of their claims in full settlement. During the years of its operation prior to 1949, Helene's, Inc., had borrowed various amounts from the United States National Bank of Portland for use as working capital. Such loans were guaranteed by Holtz who pledged as collateral certain listed common stocks and life insurance policies owned by petitioners. Petitioners claimed a deduction in the amount of $83,316.29 on their joint income tax return for 1950 as "Bad debts arising from sales or services." This deduction was explained in Schedule C-2 of petitioners' 1950 return as "Payments made to U.S. National Bank as guarantor of business debt." The foregoing deduction represented payments made by petitioner in January and March of 1950 as guarantor on the notes of Screen Adette Equipment Corporation. *153 [Opinion] The respondent does not question the worthlessness of the indebtedness in issue or the year in which it is deducted as worthless, but has determined that petitioners are not entitled to the aforementioned bad debt deduction because the debt was not incurred in the conduct of petitioner's trade or business. The respondent therefore contends that petitioner's loss resulting from his guaranty on the notes of Screen Adette Equipment Corporation must be treated as a nonbusiness bad debt pursuant to the limitations of section 23(k)(4) of the 1939 Code. The petitioners contend that Holtz was engaged in the business of promoting, organizing, financing and managing corporations during the years in issue and that the guaranty obligation on behalf of Screen Adette Equipment Corporation was incurred in the conduct of that business. They accordingly take the position that the loss in the amount of $83,316.29 is deductible in full as a business bad debt under section 23(k)(1) of the 1939 Code. The issue here presented depends for its resolution on the determination as to whether or not petitioner was engaged in a trade or business of his own during 1949 and 1950 to which the *154 indebtedness in question was proximately related. Robert Cluett, III, 8 T.C. 1178; Charles G. Berwind, 20 T.C. 808, affd. 211 Fed. (2d) 575; Jan G. Boissevain, 17 T.C. 325. If the indebtedness in question was not proximately related to petitioner's trade or business at the time it became worthless, it is deductible only as a nonbusiness bad debt under section 23(k)(4) of the 1939 Code. It is settled law that the business of a corporation is not the business of its officers. Burnet v. Clark, 287 U.S. 410; Jan G. Boissevain, supra. However, a worthless debt, resulting from a loan by a stockholder to his corporation, may qualify as a business bad debt if the stockholder was engaged in promoting, organizing, financing and managing business enterprises. Henry E. Sage, 15 T.C. 299; Vincent C. Campbell, 11 T.C. 510; Langdon L. Skarda, 27 T.C. 137; Giblin v. Commissioner, 227 Fed. (2d) 692, reversing a Memorandum Opinion of this Court, decided October 29, 1954 [13 TCM 1009,; T.C. Memo. 1954-186]. The authority of the foregoing *155 line of decisions is applicable only in the exceptional situations in which the taxpayer's activities in promoting, managing and making loans or contributions to a variety of businesses may be regarded as so extensive as to constitute a business separate and distinct from the business carried on by the enterprises themselves. Charles G. Berwind, supra. In Vincent C. Campbell, supra, for example, in which we held that the taxpayers were in the business of organizing and operating corporations engaged in the retail coal business, it was shown that from 1929 through 1944 the taxpayer had organized, managed and financed 12 corporations. In Giblin v. Commissioner, supra, the taxpayer, a practicing attorney, on 11 or 12 occasions between 1926 and 1945, contributed his time and money to the development of various enterprises and business ventures. The United States Court of Appeals for the Fifth Circuit there held that the taxpayer was engaged in the business of promoting or dealing in business enterprises. Petitioner has been engaged in the sale and distribution of motion picture films and equipment since 1930. During this period he carried on his *156 activities through 4 separate business units: (1) Screen Adettes, Inc., a corporation engaged in the sale and distribution of 16 millimeter films in the State of Oregon; (2) Pictures, Inc., engaged in the sale and distribution of 16 millimeter films in the Territory of Alaska; (3) Screen Adette Equipment Corporation engaged in the sale and distribution of motion picture equipment and accessories; and (4) an individual proprietorship business conducted by petitioner for the purpose of selling audio visual equipment and accessories. In addition, the petitioners owned 90 per cent of the stock of Helene's, Inc., a ladies' retail apparel store. Holtz frequently advanced funds to the aforementioned corporations, endorsed corporate notes or guaranteed bank loans to provide them with working capital, and was active in the management of their operations. Early in 1950, the United States National Bank of Portland sold the securities pledged by petitioner as guarantor on loans made to the Screen Adette Equipment Corporation and realized $83,316.29 from their sale. The proceeds were applied to the indebtedness of the corporation, resulting in losses to petitioner in the amount of $83,316.29. *157 Consequently, it is apparent that the losses in question were not incurred in or proximately related to the individual proprietorship business operated by petitioner during 1950. Moreover, insofar as we are able to determine from the record herein, the advances made by petitioner to the Screen Adette Equipment Corporation and the bank loans guaranteed by him were for the purpose of assisting that corporation in its business of selling motion picture equipment and accessories. The history of petitioner's business in connection with the foregoing 3 corporations discloses no more than the customary activity of an individual who has devoted himself to carrying on a business enterprise by means of wholly-owned corporations. We do not think that the activities outlined herein are sufficiently extensive to establish the existence of a separate business of promoting, organizing, financing and managing businesses during 1950. Cf. Dominick J. Salomone, 27 T.C. 663; Commissioner v. Smith, 203 Fed. (2d) 310, reversing 17 T.C. 135; Hickerson v. Commissioner, 229 Fed. (2d) 631, affirming a Memorandum Opinion of this Court, decided December 29, 1954 [13 TCM 1180,; *158 T.C. Memo. 1954-237]. Accordingly, on the evidence presented, we are unable to find that the indebtedness in question bore a proximate relationship to the petitioner's trade or business either at the time the loan was made or at the time it became worthless. The losses in issue must therefore be treated as nonbusiness bad debts under section 23(k)(4) of the 1939 Code. Decision will be entered for the respondent.