Ben Sonz and Frances Sonz v. Commissioner.
Sonz v. Commissioner
Docket No. 60247.
United States Tax Court
T.C. Memo 1958-30; 1958 Tax Ct. Memo LEXIS 198; 17 T.C.M. (CCH) 125; T.C.M. (RIA) 58030; February 26, 1958
*198 Held: Losses resulting from the worthlessness of certain advances and loans by petitioners to a magazine publishing corporation are not deductible under section 23(k)(1), I.R.C. 1939, as business bad debts because not incurred in or proximately related to any trade or business carried on by petitioners, but are only deductible as nonbusiness bad debts under section 23(k)(4). Held, further, since petitioners' advances and loans to the corporation created a debtor-creditor relationship, any deduction for the worthlessness of such advances and loans can be had only under section 23(k) and cannot be deducted as losses under section 23(e). M. Francis Bravman, Esq., 50 Broadway, New York, N. Y. for *199 the petitioners. Jules W. Breslow, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency in the petitioners' income tax for the year 1952 in the amount of $2,817.14. The sole issue for decision is whether the petitioners sustained a business bad debt or a non-business bad debt, or alternatively a business loss, as a result of certain advances and loans to a magazine publisher becoming worthless in 1952. Findings of Fact Some of the facts are stipulated. They are so found and are incorporated herein by reference. The petitioners, Ben and Frances Sonz, are husband and wife residing in Manhasset, New York. They filed their joint income tax return for 1952 with the director of internal revenue for the lower Manhattan district of New York. Ben has sold advertising space for Fairchild publications, Inc. since 1938. He received commissions from Fairchild for advertising space sold, if and when the ads were published. Ben's relationship with Fairchild could be terminated by either party at will and without notice. In 1950 Ben had about 150 accounts and/or advertising agencies. The accounts *200 he serviced were in the most part engaged in selling chemicals, textiles, fibers and plastics. Garden and The Gardeners' Chronicle, Inc., hereinafter referred to as Garden, was a publisher of national magazines for gardeners. It published a garden magazine which had a circulation of about 9,000 copies in 1950. Garden decided to edit the magazine so as to cater to the inexperienced gardener - a sort of "do-it-yourself" type of garden magazine. It therefore decided to increase its circulation and sell as much national advertising space as it could. In 1950 Ben became the Advertising Representative for Garden. It agreed to pay Ben a commission on all advertising space he sold directly and an over-ride commission on all advertising which the magazine carried. Ben's relationship with Garden was terminable by either party by will and without notice. In October 1950, Ben purchased 100 shares of Garden's stock for $3,750, which gave him a 20 per cent interest in that corporation. Ben was not an officer or director of Garden. During 1950 and 1951 Ben advanced $7,500 to Garden to build up its circulation, which advance was to be repaid to him out of subscription money received from new *201 subscribers. Ben was repaid $337.98. Garden, through newspaper advertising and direct mail, increased the circulation of its magazine to about 100,000 copies. In 1951 Garden paid Ben, by check, $649.81 for advertising sold. The petitioners included those commissions in their joint income tax return for 1951. At the request of Garden, Ben did not deposit the commission checks. Garden credited that amount on its books as a loan payable. In 1952 Garden became defunct and Ben was unable to recover the $7,811.83 he had advanced and loaned to it. On their 1952 income tax return, petitioners deducted the following expenses: Income reported in 1951 as compensa-
tion for advertising sold for Garden * * * paid by checks which were not
honored because Garden * * * be-
came insolvent and was defunct in
1952
$ 649.81
Business loan made to Garden * * * a
publisher of national magazines for
home gardeners which became
worthless in 1952 when the corporation
became insolvent and was de-
funct
7,500.00
The petitioners also deducted $1,000 which was part of their $3,750 capital loss resulting from the stock of Garden becoming worthless in 1952. The Commissioner *202 determined that the loss the petitioners sustained as a result of Ben's advances and loans to Garden becoming worthless constituted non-business bad debts. Ben did not hold himself out to the public as an advertising agent and he never sold advertising other than for Fairchild and Garden. Ben's relationship with Fairchild and Garden was that of an employee. Ben's advances and loans to Garden were not proximately related to his activities as an employee during 1952. The petitioners' losses which resulted from Ben's advances and loans to Garden becoming worthless were not incurred in any trade or business in which the petitioners were engaged in 1952. Opinion The petitioners contend that they are entitled to a deduction in 1952 for a business bad debt, under the provisions of section 23(k)(1) of the Internal Revenue Code of 1939, as a result of Ben's advances and loans to Garden becoming worthless in 1952. The term business bad debt is only defined negatively by the revenue laws. Section 23(k)(4) defines a non-business bad debt as a debt other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. To sustain their position, *203 the petitioners must show that in 1952 Ben was engaged in a trade or business of his own to which the bad debt loss in 1952 was proximately related. Jan G. J. Boissevain, 17 T.C. 325 (1951); Regulations 118, Section 39.23(k)-6. The petitioners argue that Ben advanced and loaned money to Garden so that it could increase the circulation of its magazine, which in turn would enable him to sell his accounts advertising space in the magazine and result in his earning commissions, and consequently the debt and its subsequent loss were proximately related to his business which he alleges was selling advertising space. The petitioners rely on Stuart Bart, 21 T.C. 880 (1954), Tony Martin, 25 T.C. 94 (1955), and J. T. Dorminey, 26 T.C. 940 (1956), as support for their position. Whether Ben's advances and loans to Garden were proximately related to his trade or business in the year they became worthless is a question of fact. The parties agree that Ben was not in the business of promoting and financing corporations in 1952. Ben sold advertising space in Fairchild's publications from 1938 through 1952. He also sold advertising space in Garden's *204 magazine during 1950 and 1951, and possibly during the early part of 1952. Ben never sold advertising space other than for Fairchild or Garden and was admittedly not an advertising agent. In view of the above we think Ben's relationship with Fairchild and Garden was that of an employee and that he was not in the business of selling advertising space as the petitioners contend. It is our opinion therefore that the character of the petitioners' bad debt is a non-business rather than business, since we fail to see how the loss resulting from the debt's becoming worthless can be proximately related to the conduct of Ben's business, which was that of an employee selling advertising space in his employers' magazines. Burnet v. Clark, 287 U.S. 410 (1932); Charles G. Berwind, 20 T.C. 808 (1953). Moreover, the record does not definitely establish that Ben sold advertising space for Garden in 1952 so that his activities that year may have been limited to selling advertising space for Fairchild, in which case it is even more clear that the loss resulting from the debt's becoming worthless was not proximately related to the conduct of his business. In the alternative *205 the petitioners contend that Ben sustained the loss in a joint venture between him and Garden, which was proximately related to Ben's trade or business of selling advertising space, and is therefore deductible as a business loss under section 23(e)(1). This argument is without merit. Ben's advances and loans to Garden created a debtor-creditor relationship, and it is well settled that a loss attributable to the worthlessness of a debt shall be regarded as a bad debt loss, deductible as such or not at all. Putnam v. Commissioner, 352 U.S. 82 (1957); Spring City Foundry Co. v. Commissioner, 292 U.S. 182 (1934). We hold that the petitioners' loss is deductible only as a non-business bad debt under section 23(k)(4). Decision will be entered for the respondent.