ROBERT CLUETT, 3RD, AND CATHERINE M. CLUETT, PETITIONERS, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10067.   Promulgated June 16, 1947.

*Howard O. Colgan, Jr., Esq.*, for the petitioners.
*Sheldon V. Ekman, Esq.*, for the respondent.

### OPINION.

MURDOCK, *Judge*: The Commissioner determined a deficiency of
$8,531.67 in the income tax of the petitioners for the calendar year
1943.   The only issue for decision is whether a debt of $28,985.97
which became worthless in 1943 is deductible in its entirety under
section 23 (k) (1), or whether it was a "non-business debt" within
the meaning of that term as used in section 23 (k) (4) and, therefore,
subject to the limiting provisions of that paragraph.   The facts have
been stipulated.

The petitioners are husband and wife.   They filed a joint return
for the calendar year 1943 with the collector of internal revenue for
the second district of New York.

Robert Cluett, 3rd, hereinafter referred to as the petitioner, became
a member of the New York Stock Exchange in 1923.   He has retained
his membership at all times since and has been a general partner in
various stock brokerage firms.   He acted for each as a floor member
in the purchase and sale of securities, using his membership in the
Exchange for that purpose.   The commissions from those trans-
actions accrued to his firm.   Only persons admitted to membership
are permitted to transact such business.

There were 1,100 members of the Exchange on January 1, 1929.
The membership was increased one-fourth at that time and each
member was given the right to transfer his proportionate part (one-
fourth) of an additional membership within 3 years.   The petitioner
sold this additional one-fourth of a new membership to James Russell
Lowell for $125,000 in 1929.   Lowell gave the petitioner his individ-
ual promissory notes for $65,000 of the purchase price.

The petitioner paid Federal income tax for 1929 at the capital
gains rate upon the difference between $125,000 and one-fifth of the
original cost of his membership in the Exchange.

Lowell later reduced the principal of the debt to $35,000.   He be-
came bankrupt in 1942, and the petitioner, in 1943, received $6,014.03

from the bankrupt estate. The balance of the indebtedness, amounting to $28,985.97, became worthless at that time.

No deduction on account of the worthlessness or partial worthlessness was ever claimed or allowed for any prior year. The Commissioner, in determining the deficiency for 1943, disallowed a bad debt deduction in respect of this debt and explained that it "constituted a non-business debt and in accordance with the provisions of section 23 (k) (4) of the Internal Revenue Code as amended, the loss resulting from its having become worthless is considered a short-term capital loss." The result was to allow a deduction of only $1,000.

The principal contention of the respondent seems to be that the loss from the bad debt in question did not arise in the ordinary course of the operation of a business involving the buying and selling of stock exchange seats. The petitioner does not contend that he was regularly engaged in any such business. Neither does he contend that the loss in question was one sustained in a usual transaction of any partnership in which he was a member. He contends, however, that the loss resulted directly from the operation of the business in which he was regularly engaged, both at the time the sale was made and at the time the debt became worthless, and, in the alternative, that the loss was at least proximately related to or connected with that business. Cases, cited by the respondent, relating to net operating losses are not controlling.

The legislative history of section 23 (k) (4) indicates that its principal purpose was to place a limitation upon losses from bad debts, such as loans to relatives or friends which had no connection with the business of the lender. Section 23 (k) (1) allows a deduction for debts which become worthless within the taxable year, but does not apply, in the case of an individual, to a nonbusiness debt as defined in paragraph 4 of subsection (k). Paragraph 4, as added by sections 124 (a) and 124 (d) of the Revenue Act of 1942, applicable to the calendar year 1943, is as follows:

NON-BUSINESS DEBTS.—In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

Section 29.23 (k)–6 of Regulations 111, applicable to that paragraph provides that:

The character of the debt * * * is to be determined rather by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in the conduct of the trade or business in which the taxpayer is engaged at the time the debt

becomes worthless, the debt is not a non-business debt for the purpose of this amendment.

A similar reference to proximate relationship between the debt and the business in which the taxpayer is engaged at the time it becomes worthless is also found in the legislative history of the new provision. H. Rept. No. 2333, 77th Cong., 2d sess., p. 77.

The debt here in question was not the result of a loan by the petitioner to a friend or relative or an isolated transaction which bore no relation whatsoever to the business in which he was engaged, but, on the contrary, was closely related to the business of owning and using a stock exchange membership for the production of income, in which business the petitioner was engaged not only in 1929, when the debt was created, but also in 1943, when it became worthless. This business of the petitioner and that of the partnerships to which he belonged were not necessarily identical or coextensive for the purpose of section 23 (k) (4). His membership in the Exchange was one of the principal tools with which the petitioner conducted his business at all times material hereto. It was one of the important assets which he brought to the firms of which he became a member. He, alone, could use that seat to conduct business of those firms or for those firms on the floor of the Exchange, as the stipulation clearly shows. He did use his membership for that purpose. He had bought it for that purpose.

There was an accretion of one-fourth to that membership in 1929 and his sale of that one-fourth resulted in the debt. That debt arose in the course of the petitioner's business, which involved owning the Exchange membership, which, in turn, required a sale of the accretion in order to realize any benefit therefrom. He was still engaged in that same business in 1943 when the debt became worthless. Thus, the debt, at all times material hereto, bore a proximate relation to the business of the petitioner and the loss from its worthlessness also bore a proximate relationship to that business. The deduction is proper under the law and the Commissioner's regulations. Cf. *Whitney* v. *Commissioner*, 73 Fed. (2d) 589, in which Whitney, a member of a partnership and a member of the Exchange, was allowed deductions for payments which he was required to make to the gratuity fund of the Exchange; *James B. Lowell*, 30 B. T. A. 1297, in which under similar circumstances the debtor in the present case and his partner were allowed deductions for dues and assessments imposed upon members to meet the operating expenses of the Exchange; and, *Charles E. Robertson*, 1 B. T. A. 501, to the same effect.

*Decision will be entered under Rule 50.*