ESTATE OF THEODORE GUTMAN, DECEASED, ELSIE GUTMAN, EXECU-
TRIX, AND ELSIE GUTMAN, SURVIVING WIFE, PETITIONER, *v.* COM-
MISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE GOLDBERG AND MARIE GOLDBERG, HUSBAND AND WIFE, PETI-
TIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26949, 26950.    Promulgated April 24, 1952.

*Jeremiah S. Gutman, Esq.*, for the petitioners.
*Michael J. Kenny, Esq.*, for the respondent.

118

OPINION.

TURNER, *Judge:* Taking the position that at all times material from the formation of the new partnership through 1944, Gutman and Goldberg were in the business of buying and selling real estate, mortgages and interests in mortgages and that at all times during which they were the owners of interests in the Harrison Avenue and Crotona Avenue mortgages they held such interests primarily for sale to customers in the ordinary course of their real estate and mortgage business, the petitioners contend that the respondent erred in disallowing the deductions taken as losses on account of such interests and determining that they were to be treated as losses sustained on the dispo-

sition of capital assets. They urge that the amounts deducted with respect to the interests in the Harrison Avenue mortgage represented business bad debts and as such were deductible in full and that the amounts deducted with respect to the interests in the Crotona Avenue mortgage represented business losses, likewise deductible in full. The respondent concedes that the mortgages in question were acquired and held by the old partnership for sale to customers in the regular course of its business. However, on brief, he contends that from 1929 through 1944 Gutman and Goldberg did not handle any mortgage business and that since the mortgages in question were acquired by them in 1941 as stockholders in the liquidation of Resources, which had been formed by them and the estate of Leopold Levy in 1930, the losses sustained on the interests in the Harrison Avenue mortgage were nonbusiness bad debts and the losses sustained on the interests in the Crotona Avenue mortgage were capital losses. Pertinent portions of the Internal Revenue Code are set out below.[1]

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

\*     \*     \*     \*     \*     \*     \*

(e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
    (1) if incurred in trade or business; or
    (2) if incurred in any transaction entered into for profit, though not connected with the trade or business;

\*     \*     \*     \*     \*     \*     \*

(g) CAPITAL LOSSES.—
    (1) LIMITATION.—Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117.

\*     \*     \*     \*     \*     \*     \*

(k) BAD DEBTS.—
    (1) GENERAL RULE.—Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. \* \* \* This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt as defined in paragraph (4) of this subsection.

\*     \*     \*     \*     \*     \*     \*

    (4) NON-BUSINESS DEBTS.—In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

SEC. 117. CAPITAL GAINS AND LOSSES.
    (a) DEFINITIONS.—As used in this chapter—
        (1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), or an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue, or real property used in the trade or business of the taxpayer:

The stipulation of facts submitted by the parties is clear, and the parties are in agreement that the old partnership was engaged in the real estate and mortgage business for several years prior to its dissolution by the death of Levy in October 1929 and that the real estate and mortgages owned by it at the time of dissolution were held for sale to customers in the ordinary course of business. However, a controversy has developed on the briefs of the parties as to the effect to be given a portion of the stipulation relating to the type of business other than law, carried on by the new partnership. In addition to stipulating that the new partnership, composed of Gutman and Goldberg, carried on the same type of law practice as the old partnership, the parties stipulated that "The new partnership also carried on a real estate business similar to the old partnership, but this real estate business was greatly diminished in comparison to the real estate business carried on by the old partnership." Using as a basis the quoted stipulation and the testimony of Goldberg that the real estate business of the new partnership consisted of the collection of rents, the purchase and sale of real estate, the purchase and sale of mortgages and interests in mortgages, that the new partnership continued until the death of Gutman in 1948, that throughout the existence of the partnership the partnership engaged in the purchase and sale of mortgages and that all purchases of real estate and mortgages were for the purpose of resale and not as investments, the petitioners contend that they have established that Gutman and Goldberg were in the business of buying and selling real estate, mortgages, and interests in mortgages during 1944. They further contend that the respondent's contention that from 1929 through 1944 Gutman and Goldberg did not handle any mortgage business is contrary to the stipulation. In view of the respective positions of the parties, it is not clear just what effect they intended should be given to the above-quoted portion of the stipulation. However, after considering that provision of the stipulation in connection with other provisions of the stipulation and the testimony of Goldberg, we are of the opinion that the business carried on by the new partnership from its formation through 1944 was of substantially the same character as that carried on by the old partnership, but that due to the break in the real estate and mortgage markets was of a greatly reduced volume both as to the number of transactions and the sums involved. Having reached that conclusion, the respondent's contention that Gutman and Goldberg never handled any mortgage business from 1929 through 1944 must be denied.

The evidence also shows that after reacquiring the interests in the mortgages in 1941, Gutman and Goldberg held them for sale to customers in the regular course of their business and that they made various efforts to sell them but were unsuccessful because the mortgages

were bad since they were on old type properties and were not productive of income.

In the circumstances presented we hold that the Harrison Avenue and Crotona Avenue mortgage interests were not capital assets within the meaning of section 117 (a) (1).

Since Gutman and Goldberg accepted a lesser amount than the face value of their interests in the Harrison Avenue mortgage in full satisfaction of such interests there was no sale or exchange of their interests. *Hale* v. *Helvering*, 85 F. 2d 819. Consequently a question arises as to whether the indebtedness represented by their interests was a business bad debt or a nonbusiness bad debt. To escape classification as a nonbusiness bad debt as defined by section 23 (k) (4), a debt and the loss from its worthlessness must bear a proximate relation to a business in which the taxpayer is engaged at the time the debt becomes worthless. *Robert Cluett, 3rd*, 8 T. C. 1178; *Jan G. J. Boissevain*, 17 T. C. 325. In the instant case Gutman and Goldberg during 1944, the year in which the portions of the Harrison Avenue mortgage indebtedness in controversy became worthless, were engaged in the real estate and mortgage business. Therefore, there was a proximate relation of the indebtedness and the loss from its worthlessness to the business engaged in by them at the time the worthlessness occurred. Accordingly the indebtedness did not constitute a nonbusiness bad debt but was a business bad debt within the meaning of section 23 (k) (1) and as such was deductible in full. *Robert Cluett, 3rd, supra.*

Having concluded above that the Crotona Avenue mortgage indebtedness was not a capital asset, and since Gutman and Goldberg held their interests therein primarily for sale to customers in the ordinary course of their real estate and mortgage business, the losses sustained on the sale of such interests constituted losses falling within section 23 (e) (1) and likewise were deductible in full.

With respect to the respondent's disallowance of a deduction of $1,176.25 taken as a long term capital loss sustained on the sale of the Massapequa property by Elsie Gutman, the petitioners contend that this property and the Jamaica property, which was sold 35 days later at a gain, constituted a single residence of the Gutman family, one property complementing the other, and that the sales by which they were disposed of should be treated as a unit with the loss sustained on the sale of one being offset against the gain realized on the sale of the other. The respondent contends that these properties, which were situated in different towns, were acquired in separate transactions several years apart, and disposed of in separate transactions more than a month apart, constituted separate and distinct personal residences used by the Gutman family and that the law and regulation prohibit the allowance of any loss sustained on the sale of

the one or the offsetting of such loss against the gain realized on the other.

We have here two separate and distinct properties, each fully appointed and equipped for occupancy at any time. They were situated in different towns a considerable distance apart. There is no showing or claim that they were sold as a unit or that they were offered for sale as such. Neither does it appear that they were ever regarded by the owner as anything other than separate and distinct properties at any time prior to the reporting of the results of the sales for income tax purposes. See and compare *Richard P. Koehn*, 16 T. C. 1378. Although in the *Koehn* case the residences were occupied consecutively and the residences involved in the instant case were occupied alternately, the reasoning there is also applicable here. The position of the respondent is, in our opinion, well taken and his determination of the matter is accordingly approved.

*Decisions will be entered under Rule 50.*