Robert W. DePuy and Mary Louise DePuy v. Commissioner.
De Puy v. Commissioner
Docket No. 50352.
United States Tax Court
T.C. Memo 1955-81; 1955 Tax Ct. Memo LEXIS 259; 14 T.C.M. (CCH) 268; T.C.M. (RIA) 55081; April 7, 1955
*259 Held, petitioners had a debt against Armand Markwordt with whom petitioner Robert W. DePuy had been engaged in joint ventures in 1944, 1945, and 1946, and this debt became worthless in 1948. Held, further, the debt was a business debt and was deductible in its entirety under section 23(k)(1) of the 1939 Code as contended by petitioners and was not a nonbusiness debt deductible only as limited by section 23(k)(4) of the 1939 Code. W. M. Aikman, Esq., Maverick Building, San Antonio, Tex., for the petitioners. Douglas M. Moore, Esq., and W. B. Riley, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency of $10,645.52 in the income tax of petitioners for the year 1948. This deficiency is due to the addition of $20,702.47 to the $40,670.22 net income reported by petitioners on their joint return. This adjustment is explained in the deficiency notice as follows: "(a) The deduction of $20,702.47, which you claimed for the year 1948 as a bad debt arising from a transaction with A. Marquardt, [2] has not been substantiated. It has been determined that the amount claimed is not allowable. "In the alternative, *260 it is held that in the event it is determined that the amount of $20,702.47 is a bed debt, that said amount is a nonbusiness bad debt and is therefore, to be treated as a loss from the sale or exchange, during the year, of a capital asset held for not more than six months." Petitioners contest the foregoing adjustment by appropriate assignments of error. Findings of Fact Part of the facts were stipulated and are so found and incorporated herein by this reference. Petitioners Robert W. DePuy and Mary Louise DePuy are husband and wife and reside at Hondo, Medina County, Texas. They filed a joint income tax return for the calendar year 1948 with the collector of internal revenue at Austin, Texas. For convenience, Robert W. DePuy will hereafter be referred to as petitioner. Petitioner entered into certain joint operations in buying and selling livestock with Armand Markwordt of Kerrville, Texas, such operations being carried on intermittently during the years 1944, 1945, 1946, and concluded in 1947. Armand Markwordt will hereafter be referred to as Markwordt. Certain of these operations were carried *261 on through the bank account of Markwordt and other operations were carried on through the bank account of petitioner. The joint venture operations conducted through the bank account of Markwordt commenced in 1944 and terminated in January of 1947. The joint venture operations conducted through the bank account of petitioner commenced in 1946 and terminated in January of 1947. 1944 and 1945 Transactions In 1944 and 1945, petitioner made transfers of cattle and advances in cash to Markwordt in respect to operations carried on through the account of Markwordt, as follows: September, 1944 - Cattle
$ 3,000.00
October, 1944 - Cattle
2,000.00
May 29, 1945 - Cash
15,000.00
June, 1945 - Cash
3,877.20
Total transfers and advances
$23,877.20
Petitioner received the following returns from Markwordt from these transactions: May, 1945 (Piper Cub Airplane)
$ 1,500.00
January 9, 1946 - Cash
12,266.90
January, 1946 - 283 Ewes
1,312.75
January 29, 1947 - Cash
4,000.00
Total
$19,079.65
In his income tax return for 1945, petitioner reported a profit of $2,266.90 as derived from "dealings" with Markwordt. Petitioner's share of the net profit from *262 the joint venture, agreed upon by petitioner and Markwordt for the year 1945, was $3,766.90. Markwordt purchased a plane for the account of petitioner in May or June 1945 for $1,500. This plane was destroyed in September 1945. Petitioner deducted the loss of $1,500 from the profit of $3,766.90 and reported as net profit from the joint venture, $2,266.90. Although petitioner reported a net profit of $2,266.90 in his 1945 return from the joint venture, he did not receive these profits in cash. The sum of $3,766.90 was embodied as profits in a note from Markwordt to petitioner for $9,406.83, executed in 1947, as will hereafter appear. There was an agreed profit of $842.38 as derived through the account of Markwordt in the year 1946 dealings. This $842.38 was not paid to petitioner in cash but was embodied in the $9,406.83 note as will hereafter appear. Sometime in January 1947, Markwordt executed an unsecured demand note payable to petitioner in the amount of $9,406.83, with interest commencing January 1, 1947, which note was issued as evidence of Markwordt's debt to petitioner for unreimbursed capital advancements and profits of the joint venture operations conducted through Markwordt's *263 bank account. This note was made up of the following items: Capital advancements made by peti-
tioner to joint venture and never
returned to him
$4,797.55
Petitioner's share of profits, 1945
3,766.90
Petitioner's share of profits, 1946
842.38
Total
$9,406.83
1946 Transactions In 1946, petitioner made the following expenditures for the purchase of sheep on account of the joint operations of petitioner and Markwordt through petitioner's bank account: Pete Kenedy - Apr. 16
$ 2,000.00
White Bros. - Apr. 19
19,000.00
May 20
25,755.45
May 22
12,639.42
May 22
18,005.82
May 23
34,272.07
May 28
23,392.80
Pete Kenedy - May 29
12,130.37
White Bros. - June 6
10,281.16
Verne Elliott - May 28
60.00
Cash item for travel
54.00
$157,591.09
Petitioner received the following returns as a result of the sale of sheep purchased above in the year 1946: Shirley Livestock Com.
Co.
May 29
$ 10,418.66
Swift & Henry
June 4
34,245.41
June 7
9,833.23
June 24
5,686.67
June 6
7.21
June 7
36,945.40
June 8
22.05
Shirley Livestock Com.
Co.
June 19
14,270.25
Wilson Flynn Com. Co.
June 15
4,942.92
Commodity Credit Corp.
July 18
17,626.61
June 15
1.40
$133,999.81
*264 In January 1947, Markwordt executed his note in favor of petitioner for $11,795.64, the amount of his one-half of the loss on operations carried on through the petitioner's account, that is, one-half of the difference between the amount paid for sheep and the amount received from proceeds of sale. The petitioners deducted a loss of $10,953.26 in their income tax return for the year 1946, as representing their share of the joint venture loss incurred in 1946 dealings. The petitioners' one-half of the agreed profits on other operations carried on through the account of Markwordt as distinguished from the account of petitioner for the year 1946 was $842.38. This profit, deducted from petitioner's loss of $11,795.64 resulting from the operations carried on through petitioner's bank account for the year 1946, leaves the net loss so deducted from the income tax return for the year 1946 of $10,953.26. This loss is not before us as an issue in this proceeding. Facts On Issue When The Debt Became Worthless Petitioner made efforts to collect the notes in 1947, after they were executed, without success. Petitioner instituted proceedings in the District Court of Medina County, Texas, *265 against Markwordt, Cause No. 4253, seeking judgment against Markwordt for and on account of certain notes, with interest thereon, which proceedings resulted in a judgment in favor of petitioner and against Markwordt on February 24, 1948, in the sum of $21,308.36. On March 15, 1948, the Sheriff of Kerr County, Texas, returned a writ of execution with a notation "not executed for reason no property found in Kerr County, belonging to the defendant, Armand Markwordt, subject to execution." Petitioners claimed on their joint income tax return for the calendar year 1948 a loss of $20,702.47 resulting from "Judgment against A. Marquardt in Medina County Court $21,202.47 less payment $500.00." [2]
Petitioner's judgment against Markwordt became worthless in 1948. Issue As To Whether The Debt Was a Business Debt The notes involved herein represent a debt arising through operations of buying and selling livestock on account of the joint account *266 of petitioner and Markwordt during the years 1944, 1945, and 1946. It was a joint venture between them. Petitioner was in the business of raising, buying, and selling livestock during the years 1945, 1946, 1947, and 1948, is now in that business, and was in that business before those dates. Opinion BLACK, Judge: Petitioner states his contentions in his brief, as follows: "a. That there was a valid and bona fide debt existing and due petitioner, Robert W. DePuy from Armand Markwordt, in the sum of $20,702.47. "b. That the debt of Armand Markwordt was a worthless debt and became worthless in 1948. "c. That petitioner was in the business of raising, buying and selling livestock during the years in which the debt of Armand Markwordt arose and the year in which the debt became worthless. "d. That the business of the joint venture of petitioner and Armond Markwordt was the same as that of the petitioner. "e. That the debt of Armond Markwordt of $20,702.47 is deductible as an ordinary bad debt in the year 1948 under the provisions of Section 23(k)(1) * * *." We think it is clear that petitioner had a debt against Markwordt which resulted from joint ventures in which they *267 were engaged during the years 1944, 1945, and 1946. This indebtedness was evidenced by two promissory notes which bear the signature of Armand Markwordt and each is payable to R. W. DePuy. The notes were introduced in evidence and we see no reason whatever to doubt their authenticity. In addition to the notes themselves, there is in evidence by way of stipulation a judgment by the District Court of Medina County, Texas, in favor of R. W. DePuy against Armand Markwordt for the sum of $21,308.36. There is also in evidence by way of stipulation that "On March 15, 1948, the Sheriff of Kerr County, Texas, returned a Writ of Execution with a notation, 'not executed for reason no property found in Kerr County, belonging to the defendant, Armand Markwordt, subject to execution'." It seems clear to us that Markwordt was indebted to petitioner in the sum of the two promissory notes, less the $500 which Markwordt had paid on them after their execution. There is nothing to show just when this $500 was paid but petitioner testified that $500 was paid on the judgment subsequent to its being entered. It is this net amount which petitioners claimed on their 1948 return as a deduction for bad debt. *268 Petitioner endeavored to collect this indebtedness by suit and judgment in 1948 and failed in his efforts. The return of no property found by the Sheriff of Kerr County, Texas, the home of Markwordt, would seem sufficient to establish the identifiable event which proves the debt became worthless in 1948. There is no reason that we can see which would justify us in holding that the notes were worthless in the year 1947 when petitioner took them from Markwordt, as respondent contends. It seems to us from all the evidence that it was in the year 1948 that the notes definitely became worthless, and we so hold. In addition to contending that petitioner has not met his burden of proof that his debt against Markwordt became worthless in 1948, respondent also contends that some of the debt which petitioner held against Markwordt, evidenced by the note for $9,406.83, represented profits which petitioner had never taken into income and therefore cannot be deducted as a bad debt. Respondent says that this is particularly true as to $1,500 included in the note. We think respondent must be sustained in this contention. A bad debt deduction will be denied if the funds used to create the debt have *269 improperly escaped liability for income tax. Cf. John L. Seymour, 14 T.C. 1111, at 1117. Petitioner does not contest the validity of this rule of law but claims that he has met it by deducting, in his income tax return for 1945, $1,500 (as representing a lost airplane which Markwordt purchased for him in 1945) from the $3,766.90 which he concedes represented his share of the profits for that year in his joint venture with Markwordt and that this left him with $2,266.90 profits from his joint venture with Markwordt and that was all he need report for that year from such joint venture. In the first place we do not have petitioner's 1945 return before us in this proceeding and we do not know what, if any, loss petitioner deducted because of the destruction of the airplane. It has been stipulated: "3. The petitioner, Robert W. DePuy, reported as income on his separate income tax return for the calendar year 1945 a profit of $2,266.90 derived from 'Buying and selling livestock with A. Markwordt, Kerrville, Texas.'" There is no other evidence before us which would justify us in holding that petitioner ever reported, either directly or indirectly, in excess of $2,266.90 *270 as his share of profits from this 1944-1945 joint venture with Markwordt. If he had a loss of $1,500 in 1945 from the destruction of an airplane that would have to be taken separately as a casualty loss. His profits of $3,766.90 from the joint venture with Markwordt should have been reported as a part of his gross income for that year, instead of the $2,266.90 which it is stipulated he did report. Petitioner's own testimony is to the effect that the note which he took from Markwordt in January 1947 for $9,406.83 was made up of the following items which Markwordt owed him: Petitioner's share of profits 1944-1945
joint venture
$3,766.90
Petitioner's share of profits 1946 joint
venture
842.38
Advances of capital never returned to
petitioner
4,797.55
Total
$9,406.83 Under the evidence, we think the deduction to which petitioner is entitled on account of this particular note becoming worthless in the taxable year should be computed as follows: Petitioner's share of profits for 1945
from his joint venture with Mark-
wordt and which was taken into in-
come
$2,266.90
Petitioner's share of profits for 1946
from his joint venture with Mark-
wordt and which respondent con-
cedes was taken into income
842.38
Advances of capital never returned to
petitioner
4,797.55
Total
$7,906.83
*271 Respondent also contends that petitioner has not established by adequate proof that $3,877.20 of the $4,797.55 capital advances to the joint venture which petitioner claims was never returned to him. We do not agree with respondent in this contention. We think our Findings of Fact under the heading "1944 and 1945 Transactions" show correctly the advancements made to the joint venture which was being operated through Markwordt's bank account in those years. These findings show that in 1944 and 1945, petitioner made total advancements to the joint venture of $23,877.20 and that of these advancements there was returned to petitioner in 1945, 1946, and 1947 a total of $19,079.65. Thus, of the capital advancements which petitioner made to the joint venture which was being operated through Markwordt's bank account, $4,797.55 was never returned to him. It was embodied in the note for $9,406.83. Respondent's contention that petitioner has failed to show that $3,877.20 of his claimed capital advancements to the joint venture was actually made is not sustained. Respondent does not question the deductibility of petitioner's $11,795.64 note against Markwordt providing the other tests are met, *272 namely, the test of becoming worthless in the taxable year and the test that the debt was a business debt, rather than a nonbusiness debt. We have already held that the debt evidenced by the notes and put into judgment became worthless in 1948. We now take up the issue as to whether the debt was a business debt as petitioner contends or was a nonbusiness debt as the respondent determined in the alternative and as he still contends in his brief. The Commissionei in his statement accompanying his determination of the deficiency said: "In the alternative, it is held that in the event it is determined that the amount of $20,702.47 is a bad debt, that said amount is a nonbusiness bad debt and is therefore, to be treated as a loss from the sale or exchange, during the year, of a capital asset held for not more than six months." Respondent, in making this contention, relies upon section 23(k)(4) of the Internal Revenue Code of 1939, printed in the margin. [3] In the face of the undisputed evidence which is in the record, we think that respondent's contention that petitioner's debt against Markwordt was a nonbusiness debt within the provisions of section 23(k)(4) is without merit. *273 Petitioner and Markwordt, during the years 1944, 1945, and 1946, were engaged in joint ventures in dealing in livestock. Petitioner advanced most, if not all, of the funds with which the joint ventures were operated and apparently Markwordt was the active manager of the joint ventures. If there were profits they were to share equally in the profits, and if there were losses they were to share equally in the losses. At first there were some small profits but in the end the joint ventures resulted in considerable *274 losses. Markwordt was unable to pay his share of the losses and in fact never paid in cash petitioner's share of the small profits and executed his promissory notes in the amounts which have been detailed in our Findings of Fact. The amounts of these notes put into stated form Markwordt's indebtedness to petitioner. The indebtedness was the direct result of their business dealings together in the joint ventures. We think it was undoubtedly a business debt rather than a nonbusiness debt. Petitioner cites in support of his contention that the debt was a business debt Montell Davis, 11 T.C. 538. The taxpayer in that case was engaged in the automobile business. He entered into a joint venture with Robert W. Vaughn for the promotion and sale of certain plastic products. The taxpayer loaned various sums of money to Vaughn for expenses, who had agreed to give him an interest in the business. The products made by the company with whom Vaughn had a contract consisted of toothbrushes, various powders, and other dental supplies, together with rubber substitutes. The taxpayer entered into an agreement to assign his one-half interest in the synthetic rubber contract to a third party, *275 contingent upon Vaughn's agreeing to assign his interest. Vaughn refused to make such assignment and returned the contract to the manufacturing company which was then in default. The taxpayer was unable to collect the advances made to Vaughn. The Tax Court held that this was an ordinary business bad debt, stating in the course of the opinion: "There remains for consideration the bad debt issue as to which we have made an ultimate finding of fact favorable to petitioner. The record establishes that the money was lent by petitioner to Vaughn in connection with their business relation under a promise of reimbursement, which reimbursement was never made. It is also proven that all reasonable efforts to collect were made without result. Investigation made as to the prospects of repayment resulted in the conclusion that the debt was uncollectible and became worthless in 1945. We agree and have so found. * * *" Cf. Robert Cluett, 3rd, 8 T.C. 1178
We hold that petitioner's debt against Markwordt is deductible as an ordinary bad debt under section 23(k)(1) of the 1939 Code, and not as a nonbusiness bad debt under section 23(k)(4). The amount of the deduction of $20,702.47 *276 claimed by petitioners on their joint return will be reduced $1,500 for the reasons hereinbefore expressed. Decision will be entered under Rule 50. Footnotes
2. This is the same person as Armand Markwordt, referred to in this report.↩
2. The judgment which petitioner obtained against Markwordt was actually $21,308.36 instead of $21,202.47. This discrepancy is not explained but, however, does not seem to affect the result because neither party has argued about it in his brief.↩
3. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - * * *
(4) Non-business Debts. - In the case of a taxpayer, other than a corporation, if a nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "nonbusiness debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩