Nathan Milgroom and Sadye Milgroom v. Commissioner.
Milgroom v. Commissioner
Docket No. 77329.
United States Tax Court
T.C. Memo 1960-285; 1960 Tax Ct. Memo LEXIS 8; 19 T.C.M. (CCH) 1564; T.C.M. (RIA) 60285; December 30, 1960
*8 Petitioner, a certified public accountant, made loans to a corporation engaged in the business of selling curtains, of which he was a salaried officer and his son was the controlling stockholder. Held, petitioner was not entitled to a business bad debt deduction when the loans became worthless in the year in question, since the debts were not proximately related to his accountancy business. James B. Muldoon, Esq., for the petitioners. Raymond T. Mahon, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in the petitioners' income tax for the years 1954 and 1955 in the respective amounts of $2,706.64 and $2,147.17. The issues are: 1. Whether loans in the amount of $44,027.80 made by petitioners to the Ellis Curtain Company and which became worthless in 1954 are deductible in that year as a business bad debt or as a nonbusiness bad debt; and 2. Whether petitioners are entitled to a net operating loss deduction in 1955 in the amount of $28,308.27. Findings of Fact Nathan and Sadye Milgroom, husband and wife, are residents of Brookline, Massachusetts. They filed joint Federal income tax returns for the years 1954 and 1955 with the district director of internal revenue for the district of Massachusetts, Boston, Massachusetts. Nathan will hereinafter be called the petitioner. Petitioner in the years *10 1952, 1953 and 1954 was self-employed as a certified public accountant, and he has been engaged in the practice of accounting for more than 40 years. During the years 1952, 1953 and 1954 the petitioner devoted five or six days a week to his established accounting practice, which required the assistance of two employees. About 1947, The Arthur L. Ellis Co., a Massachusetts corporation, was organized to engage in the manufacture of curtains in Plymouth, Massachusetts. A. Linwood Ellis, Jr. and S. Harrison Chamberlain, Jr. owned all the outstanding common stock of the corporation. Petitioner performed various accounting services for the corporation for several years, including 1951, examining the corporate books and preparing tax returns and reports. Petitioner had been acquainted with Ellis and Chamberlain for many years, during which time he performed accounting services for them or their business entities. On April 9, 1952 the petitioner, A. Linwood Ellis, Jr. and S. Harrison Chamberlain, Jr. executed an agreement which provided, in part, that a new corporation known as the Ellis Curtain Company, Inc. would be formed with 300 shares of capital stock and that petitioner or his nominee *11 would subscribe and pay $20,000 for 200 shares of the stock and S. Harrison Chamberlain, Jr. would subscribe and pay $10,000 for the remaining 100 shares. The agreement gave A. Linwood Ellis, Jr. an option to buy 100 shares of the Milgroom stock within five years at $100 a share. The Ellis Curtain Company, Inc. was organized in April 1952 with a capitalization of $30,000. Petitioner's son, Robert, acquired 200 shares out of the 300 shares of the outstanding common stock of Ellis Curtain Company, Inc. and the remaining 100 shares of common stock were held by petitioner as collateral for a loan he had made to S. Harrison Chamberlain, Jr. The business of the Ellis Curtain Company, Inc. was selling the curtains that The Arthur L. Ellis Company manufactured out of material furnished by Ellis Curtain Company, Inc. During the year 1952 the petitioner was employed by the Ellis Curtain Company, Inc. as treasurer, and on the joint income tax return for 1952 filed by him and his wife he reported wages from the corporation in the amount of $5,550. During the year 1953 the petitioner was employed part time by the corporation as president, and on the joint return for 1953 he reported wages from *12 the corporation in the amount of $6,150. During the years 1952 and 1953 the petitioner reported net income from his accounting practice in the respective amounts of $4,554.44 and $4,781.32. During the years 1952, 1953 and 1954 the petitioner advanced to the Ellis Curtain Company, Inc. a total amount of $135,053.27 and the corporation, over the same period, repaid to the petitioner a total of $86,785.47. The amounts advanced by petitioner to the corporation were not evidenced by any promissory notes but were on an open account. Petitioner charged no interest to the corporation for the use of these amounts. In October 1954 the Ellis Curtain Company, Inc. executed an assignment for the benefit of its creditors. In the joint return filed for 1954 the petitioner claimed a business bad debt deduction in the amount of $44,027.80. [1] The respondent disallowed this deduction with the following explanation: It has been determined that you are not entitled to a business bad debt deduction in the amount of $44,027.80 claimed for the taxable year 1954 since the debt was not incurred in your trade or business and is therefore a nonbusiness debt. Accordingly, you have been allowed capital *13 loss deductions of $1,000.00 in each of the taxable years 1954 and 1955. Opinion Respondent at the trial stated that "No question is raised as to the fact that there was a debt involved, nor is there any question raised as to the amount of the debt or that said debt became worthless in 1954." We must decide only whether such debt, in the amount of $44,027.80, is deductible in full as a business bad debt under section 166(a) of the Internal Revenue Code of 1954[2] or as a nonbusiness bad debt allowable under section 166(d) subject to the limitations of section 1211(b). Section 166(d)(2) defines a nonbusiness debt as "a debt other than - (A) a debt created or acquired * * * in connection with a trade or business of the taxpayer; or (B) a debt *14 the loss from the worthlessness of which is incurred in the taxpayer's trade or business." Petitioner in his petition filed with this Court alleged as the only basis for his claim to a business bad debt deduction that "he has been actively engaged in the loaning of money for profit" and "that this, in and of itself, is a 'business' within the meaning of the Internal Revenue Code." In an amended petition filed after the trial, the petitioner abandoned the above allegation and alleged that the loans made by him arose out of, and were in furtherance of, his accounting business. Petitioner is a certified public accountant and he has been engaged in the accounting profession for many years. To prevail here he must show that the creation of the debt or the loss from its worthlessness was proximately related to his accounting practice. Robert Cluett, 3rd, 8 T.C. 1178. The question is essentially one of fact. Petitioner was the only witness. His testimony was that toward the end of 1951 he uncovered fraudulent sales entries on the books of a corporate client, The Arthur L. Ellis Co., and reported this to a bank in Boston which had financed the corporation's accounts receivables, *15 based on fraudulent bills of lading, for about $100,000; that the bank "was quite panicky" and suggested that petitioner "somehow form a company and work out something to salvage the bank's money;" and that petitioner was told "if you can, you won't regret it." Petitioner testified that he formed the new corporation, Ellis Curtain Company. Inc., with his son the controlling stockholder (and with himself as the holder of the remaining stock as security for a loan), and that he loaned $135,053.27 to it over the years 1952 to 1954. It was his story that he did all of this to help out The Arthur L. Ellis Co., thereby enabling it to pay the bank, and the grateful bank would then compensate him by giving him accounting business. If we understand the evidence correctly The Arthur L. Ellis Co. was to be "helped' by manufacturing curtains out of the raw material the new corporation bought, and when the new corporation sold the curtains The Arthur L. Ellis Co. was to receive a share of the profits. The testimony throughout is confused and unconvincing. At one point in the crossexamination the petitioner was asked what his purpose was in making these loans and he replied, "I really don't *16 know why I made them." It is inconceivable that petitioner, in order to increase his accounting business, would make unsecured loans totalling $135,053.27 to a new corporation on the statement of a bank official that "you won't regret it." In the years 1952 and 1953 the petitioner served as an officer of the new corporation, and his salary from the corporation in each year exceeded his net income from his accounting practice. It may be easily inferred, with this background, that the petitioner was financing a corporation for the benefit of his son, and perhaps to provide petitioner with an added source of income as a corporate officer. We need not speculate on the petitioner's reasons for making these loans. Petitioner must show that these advances bore a proximate relationship to his accounting business in order to be entitled to a business bad debt deduction. See Robert Cluett, 3rd, supra. The possibility that petitioner's advances to Ellis Curtain Company, Inc. would somehow help petitioner's accountancy business is far too remote to permit a finding that the loans were related to or made in connection with petitioner's accountancy practice. We hold respondent was *17 right in holding petitioner was not entitled to a business bad debt deduction of $44,027.80 in 1954. Petitioner in 1955 claimed a net operating loss carry-over deduction of $28,308.27, which arises solely from the claimed business bad debt deduction in 1954. Our holding on the first issue, therefore, disposes of this issue. Decision will be entered for the respondent. Footnotes
1. Petitioner's total advances to the corporation were $135,053.27 and the amount repaid by the corporation was $86,785.47, leaving a balance of $48,267.80. There is no explanation in the record as to the discrepancy between this figure and the amount actually claimed by the petitioner as a business bad debt deduction.↩
2. All section references herein are to the Internal Revenue Code of 1954, as amended.↩